742 A.2d 560

PAUL TAMBURELLI, RESPONDENT, v. HUDSON COUNTY
POLICE DEPARTMENT, APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 7, 1999—Decided December 22, 1999.

Before Judges PRESSLER, KIMMELMAN and CIANCIA.

*Francis DeLeonardis,* Hudson County Counsel, attorney for appellant (*John A. Smith, II,* Assistant County Counsel, on the brief).

*Boffa, Shaljian, Cammarata & O'Connor,* attorneys for respondent (*Thomas J. Cammarata,* on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

This is an appeal by the County of Hudson from a final decision of the Merit System Board reversing the disciplinary action taken against Lieutenant Paul Tamburelli by the Hudson County Police Department. Tamburelli had been terminated from his position with that department after a urine sample he provided tested positive for cocaine. The Administrative Law Judge issued an initial recommended decision concluding that the Hudson County Police Department did not have sufficient justification for requiring Tamburelli to submit a urine sample. The Merit System Board adopted the ALJ's recommended decision.[1] We now reverse the decision of the Merit System Board because we are satisfied that as a matter of law the information available to the Hudson County Police Department constituted reasonable suspicion of drug use by Tamburelli justifying the request for a urine sample.

The facts are essentially undisputed. On November 9, 1995, a sergeant in the Hudson County Prosecutor's Office received information from a known and reliable confidential informant (CI) that

---

[1] The Hudson County Police Department was disbanded less than one month after Lieutenant Tamburelli was terminated; therefore, he could not be reinstated. The consequences of the present litigation concern Tamburelli's entitlement to back pay and other benefits, as well as his eligibility for future employment as a police officer in New Jersey. *See Attorney General's Revised Law Enforcement Drug Screening Guidelines* (effective August 1, 1990).

on November 6, 1995 the CI had been invited into a basement apartment located at 140 Beacon Avenue, Jersey City, and in that apartment the CI witnessed Lieutenant Tamburelli smoking a crack-cocaine pipe. The Lieutenant appeared under the influence and was "agitated" that the CI was present. Tamburelli asked the CI to leave the premises.

This information was conveyed to the Hudson County Chief of Police who attempted to set up a surveillance of the Beacon Avenue apartment but was unsuccessful in doing so because of staffing problems. He was reluctant to act on the information alone, in part because there had been a previous instance (not involving Tamburelli), "where they had a tip from the prosecutor's office and ... it didn't hold up." He believed, therefore, that the information was insufficient to require a urine sample from Tamburelli.

On March 11, 1996, the police chief received a memo from the deputy chief stating that he had received complaints about Tamburelli's attitude toward other officers. The memo said nothing about drugs or drug use and recommended that Tamburelli be sent to sensitivity training.

On March 18, 1996, the police chief received another memo authored by the sergeant who had provided the information about the events on November 6, 1995, as told by the CI. This memo said the sergeant had been contacted by a public defender whose client had information concerning Tamburelli. The sergeant interviewed the public defender's client and learned the information came from a woman the client had met in the county jail. That woman told the client she was present at the Beacon Avenue location on the same date the CI had reported seeing Tamburelli smoking a crack-cocaine pipe. The woman said it was she who had bought cocaine in the building and brought it to Tamburelli in the basement apartment. She further claimed that Tamburelli paid her for certain sexual acts.

This additional information prompted the police chief to seek the advice of the Hudson County Assistant Prosecutor who was "handling police matters at that time." The assistant prosecutor concluded there was a sufficient basis to require Lieutenant

Tamburelli to submit a urine sample for testing. That sample was ultimately provided and, as noted, it tested positive for cocaine.

The Administrative Law Judge believed the information available to the Hudson County Police Department did not rise to the level of reasonable suspicion. He was concerned, among other things, with the time lapse between the first report from the CI and the request for a urine sample approximately four months later. The subsequent information provided to the police chief was discounted as either not relating to drug use (the memo about Tamburelli's interactions with his co-workers) or containing too much hearsay (the memo reciting a woman's purchase of drugs given to Tamburelli and her sexual activity with him in the Beacon Avenue apartment). We believe the ALJ, and thus the Merit System Board which did little more than adopt the recommended decision, took too restrictive a view of the evidence and probably considered "reasonable suspicion" to be a higher standard than the law actually requires.

■ Certainly a drug test performed by a police department pursuant to its regulations and the Attorney General's guidelines, is a search subject to the requirements of the Fourth Amendment of the United States Constitution. While probable cause is the general standard for permitting a search, we are here dealing with a "special governmental need" on the part of the police department and a diminished expectation of privacy on the part of the police officer. The balance struck by these interests permits a search based on reasonable suspicion without probable cause. *See Rawlings v. Police Dep't of Jersey City,* 133 *N.J.* 182, 188–90, 627 *A.*2d 602 (1993).

■ In *Drake v. County of Essex,* 275 *N.J.Super.* 585, 589, 646 *A.*2d 1126 (App.Div.1994), Judge Skillman succinctly set forth the attributes of "reasonable suspicion":

Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 *U.S.* 1, 7, 109 *S.Ct.* 1581, 1585, 104 *L.Ed.*2d 1, 10 (1989); *accord Rawlings v. Police Dep't of Jersey City,* 133 *N.J.* 182, 191, 627 *A.*2d 602 (1993). In fact, "[r]easonable suspicion is a

less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White,* 496 *U.S.* 325, 330, 110 *S.Ct.* 2412, 2416, 110 *L.Ed.*2d 301, 309 (1990); *accord State in the Interest of H.B.,* 75 *N.J.* 243, 251, 381 *A.*2d 759 (1977). Morever, "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Sokolow, supra,* 490 *U.S.* at 7, 109 *S.Ct.* at 1585, 104 *L.Ed.*2d at 10 (quoting *Illinois v. Gates,* 462 *U.S.* 213, 232, 103 *S.Ct.* 2317, 2329, 76 *L.Ed.*2d 527, 544 (1983)). Rather, it requires an evaluation of "'the totality of the circumstances—the whole picture.'" *Id.* at 8, 109 *S.Ct.* at 1585, 104 *L.Ed.*2d at 10 (quoting *United States v. Cortez,* 449 *U.S.* 411, 417, 101 *S.Ct.* 690, 695, 66 *L.Ed.*2d 621, 629 (1981)).

The United States Supreme Court characterized reasonable suspicion as the sort of common sense conclusion about human behavior upon which practical people are entitled to rely. *New Jersey v. T.L.O.,* 469 *U.S.* 325, 346, 105 *S.Ct.* 733, 745, 83 *L.Ed.*2d 720, 737 (1985).

█ Here, a known confidential informant, who worked with a specific police officer and had proved reliable in the past gave a first-hand account to a police officer of Lieutenant Tamburelli's drug activity. In and of itself, that information was sufficient to create a particularized, reasonable suspicion. That the police department waited approximately four months to act, arguably tends to diminish the vitality of the information, but we are aware of no case holding that a specific period of delay will negate reasonable suspicion. We have no doubt that at some point excessive delay can have the consequence of vitiating reasonable suspicion, but we do not believe that on the present facts four months is sufficient time to cause that result. We reach that conclusion in light of the police chief's reasons for inaction and the subsequent information obtained. The memo concerning Tamburelli's interactions with other employees did not attribute his problems to drugs, but his behavior was consistent with a drug problem. The hearsay information concerning the woman who bought the drugs, brought them to Tamburelli, and then had sexual relations with him, may not have been admissible in a criminal trial, but we are not here testing litigation evidence. We

are evaluating whether a police department acted reasonably in light of the information it had and the surrounding circumstances. On the facts presented, the police chief properly gave the hearsay sufficient credence to allow it to be part of the confluence of information forming a reasonable suspicion.

We are satisfied the drug test in the present instance was not arbitrary or discriminatory. It was not based on a hunch or an unparticularized suspicion. *Terry v. Ohio*, 392 *U.S.* 1, 27, 88 *S.Ct.* 1868, 1883, 20 *L.Ed.*2d 889, 909 (1968). It was based upon a reasonable evaluation of information that had sufficient indicia of veracity to permit a drug test of Tamburelli. *See Allen v. Passaic County*, 219 *N.J.Super.* 352, 380, 530 *A.*2d 371 (Law Div.1986).

Justice Pollock's statements in *Rawlings, supra,* are also applicable here:

> Every police officer understands that an officer who uses or sells drugs is a threat to the public.
>
> Drug testing serves to deter the use of illegal drugs by law-enforcement officials. As a police officer, plaintiff had a diminished expectation of privacy. The department entrusted him to carry firearms, drive emergency vehicles, and "exercis[e] the most awesome and dangerous power that a democratic state possesses with respect to its residents—the power to use lawful force to arrest and detain them." He was in a "safety-sensitive" position and should have expected an effective inquiry into his fitness and probity. Such an inquiry may include a urinalysis to detect the use of illegal drugs. In the balance of the interests of the department against those of plaintiff, the department's interest in ordering the drug test significantly outweighed plaintiff's privacy interest in freedom from testing.
>
> [133 *N.J.* at 189–90, 627 *A.*2d 602 (citations omitted).]

■ Accordingly, we find the Merit System Board's determination that the search was legally deficient to be erroneous as a matter of law. In so doing we do not intrude on agency prerogatives. Deference to an agency's expertise does not require deference to an agency's interpretation of caselaw or legal conclusions. *DiBlasi v. Board of Trustees, Pub. Employees' Retirement Sys.,* 315 *N.J.Super.* 298, 301–02, 718 *A.*2d 241 (App.Div.1998).

In anticipation of possible disagreement with his recommendation that reasonable suspicion was lacking, the ALJ went on to consider other issues raised by Tamburelli. There were allega-

tions that certain procedural aspects of the police department's search guidelines were not followed and that the "chain of custody" for the urine sample had been breached. The ALJ rejected those contentions and the Merit System Board accepted and adopted his findings of fact and conclusions without exception. We affirm the Merit System Board's determination of those specific issues.

The Merit System Board's order in favor of Paul Tamburelli is reversed. The administrative determination of the former Hudson County Police Department is reinstated. We remand to the Merit System Board for entry of an appropriate order.