799 A.2d 608 (2002)
352 N.J. Super. 15
STATE of New Jersey, Plaintiff-Appellant,
v.
Robert L. JOHNSON, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 2002.
Decided June 11, 2002.
*610 Megan Mullen, Assistant Prosecutor, argued the cause for appellant (Lee A. Solomon, Camden County Prosecutor, attorney; Ms. Mullen, of counsel and on the brief).
Thomas J. Gosse', Haddon Heights, argued the cause for respondent.
Bennett A. Barlyn, Deputy Attorney General, argued the cause for Peter C. Harvey, Acting Attorney General, appearing amicus curiae (Mr. Barlyn, of counsel and on the brief).
Lon Taylor, Assistant Deputy Public Defender, argued the cause for Peter A. Garcia, Acting Public Defender, appearing amicus curiae (Mr. Taylor, of counsel and on the brief).
Before Judges BAIME, NEWMAN and FALL.
*609 The opinion of the court was delivered by FALL, J.A.D.
On leave granted the State appeals from entry of an order on May 11, 2001, granting the motion of defendant, Robert L. Johnson, suppressing marijuana seized from defendant's bedroom during execution of a search warrant issued as part of a temporary restraining order (TRO) entered on September 28, 2000, pursuant to the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35, and from an order dated June 11, 2001, denying its motion for reconsideration.
We find that the procedures employed in the Family Part in this case yielded an insufficient basis to establish reasonable cause for issuance of the search warrant. Accordingly, we rule that the Law Division properly granted defendant's motion to suppress, and now affirm.
The procedural circumstances leading to issuance of the search warrant in this case are likely to recur, primarily due to the large volume of domestic violence cases in our court system, their emergent nature, and bona fide pursuit of the legislative and judicial goal to assure victims of domestic violence the maximum protection that the law can provide. See Cesare v. Cesare, 154 N.J. 394, 399, 713 A.2d 390 (1998); N.J.S.A. 2C:25-18. Our constitutional mandate to provide all persons judicial protection against unreasonable searches and seizures requires that we balance that goal and mandate through the utilization of proper procedures. We find nothing incompatible with the issuance of orders containing warrants authorizing searches to seize weapons in order to protect victims of domestic violence from the risk of harm, while at the same time maintaining our constitutional safeguard against unreasonable searches and seizures.
We begin our analysis of the standards applicable to a request for issuance of a search warrant in a domestic violence case with a discussion of established principles. Searches undertaken to promote legitimate state interests unrelated to the acquisition of evidence of criminality or in furtherance of a criminal prosecution are, under appropriate circumstances, permissible under the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution. See, e.g., Skinner v. Railway Labor Executives Ass'n., 489 U.S. 602, 633, 109 S.Ct. 1402, 1421-22, 103 L.Ed.2d 639, 670 (1989)(drug testing of railway employees permissible under circumstances that suggested drug, alcohol or other substance abuse might have been *611 involved in an on-the-job incident); New Jersey v. T.L.O., 469 U.S. 325, 341-42, 105 S.Ct. 733, 742-43, 83 L.Ed.2d 720, 734-36 (1985)(search of a student by a school official justified where there are reasonable grounds for suspecting that the search will turn up evidence that the student is violating either the law or the rules of the school); Rawlings v. Police Dep't of Jersey City, 133 N.J. 182, 188-91, 627 A.2d 602 (1993)(requirement that officer submit to mandatory drug testing valid based on an individualized reasonable suspicion that the officer had used drugs); Tamburelli v. Hudson Cty. Police, 326 N.J.Super. 551, 555, 742 A.2d 560 (App.Div.1999) (reasonable, individualized suspicion standard applied when determining whether a police officer had been lawfully tested for the presence of cocaine in his urine), certif. denied, 163 N.J. 397, 749 A.2d 370 (2000); State v. Garbin, 325 N.J.Super. 521, 525-26, 739 A.2d 1016 (App.Div.1999)(community caretaking function may provide requisite authority for entry into a private residence without a warrant), certif. denied, 164 N.J. 560, 753 A.2d 1153 (2000); S.S. v. E.S., 243 N.J.Super. 1, 14, 578 A.2d 381 (App.Div.1990), aff'd, 124 N.J. 391, 590 A.2d 1188 (1991)(articulable suspicion standard applied in non-consensual blood testing where purpose is to determine parentage); New Jersey Div. of Youth & Family Svcs. v. Wunnenberg, 167 N.J.Super. 578, 584-85, 408 A.2d 1345 (App.Div.1979) (criminal "probable cause" standard inapplicable where DYFS applies for permission to enter premises where it reasonably believes a child is being subjected to abuse or neglect).
Under such circumstances, the issue is not whether the constitutional prohibitions against unreasonable searches and seizures are applicablethey are. Rather, the focus is on the appropriate standards to determine whether the ordered search and seizure was reasonable. What is reasonable obviously depends upon the context within which the search takes place.
Our initial inquiry centers on the purpose for issuance of the search warrant at issue. The purpose of a search warrant issued pursuant to N.J.S.A. 2C:25-28j is to protect the victim of domestic violence from further violence, and not to discover evidence of criminality. Accordingly, the analysis of whether the issuance of a domestic violence search warrant passes constitutional muster should not be based on traditional notions of probable cause, which requires a well-grounded suspicion that a crime has been or is being committed. See State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972).
Given this specific purpose of a search authorized pursuant to N.J.S.A. 2C:25-28j, we hold that to support issuance of a search warrant pursuant to that section, the judge must find there exists reasonable cause to believe that, (1) the defendant has committed an act of domestic violence, (2) the defendant possesses or has access to a firearm or other weapon delineated in N.J.S.A. 2C:39-1r, and (3) the defendant's possession or access to the weapon poses a heightened risk of injury to the victim. Additionally, a description of the weapon and its believed location must be reasonably specified in the warrant. We are satisfied that these requirements are consistent with the constitutional guarantees against unreasonable searches and seizures afforded to a defendant by the United States and New Jersey Constitutions.
We now turn to the facts and circumstances that led to issuance of the September 28, 2000 TRO containing the search warrant at issue. Defendant and Sheila D. Johnson are married. They have three children: Erica and Angela, born on September 28, 1995; and Tyrea, born on January *612 25, 1992. At the time the TRO was issued, defendant and Sheila had been separated since April 2000; defendant was residing at 7605 Tripoli Avenue in Delair, the home of his parents; Sheila and the three children were residing at 244 LaCascata in Clementon.
On September 28, 2000, Sheila filed a domestic violence complaint against defendant in the Family Part under docket number FV-04-1205-01-B, alleging that defendant committed acts of harassment against her, consisting of the following:
PLAINTIFF STATES THAT DEF HAS BEEN HARASSING HER FOR MANY MONTHS BY CALLING PLA ON HER CELL PHONE, PAGER, LEAVING VERBALLY ABUSIVE MESSAGES. DEF ALSO CURSES, AND CALLS PLA NAMES IN FRONT OF THE CHILDREN. ON 9-24-00 DEF CALLED PLAINTIFF AT HOME, AND CALLED PLA AN "F'N CUNT." PRIOR HISTORY: DEF GRABBED PLA BY THROAT & CHOKED PLAINTIFF (IN `93 OR `94).
The complaint recited that defendant had obtained a domestic violence TRO against Sheila on September 22, 2000 under docket number FV-04-1136-01; that case was still pending.
Upon signing the complaint, Sheila elected to go before a Domestic Violence Hearing Officer (DVHO).[1] Sheila was sworn and testified before the DVHO. She explained that defendant had been afforded parenting time with the children under the September 22, 2000 TRO he had obtained against her, and that defendant called her on Sunday, September 24, 2000 to arrange for his parenting-time sessions. Sheila testified she gave defendant two parenting-time options to consider. Defendant then telephoned Sheila again on that day and an argument ensued, during which Sheila alleged defendant was abusive and harassing toward her. Sheila also testified that prior to the September 24th calls, defendant had telephoned on several occasions, leaving abusive and threatening messages on her answering machine. After considering Sheila's testimony, the DVHO advised Sheila she would recommend that the court issue a TRO.
The DVHO then went through the form of the proposed TRO with Sheila concerning the specifics of the requested restraints against defendant including no contact provisions, locations that defendant would be prohibited from, and designation of a contact person for defendant and Sheila to arrange for parenting time sessions. Based on Sheila's testimony, the DVHO added the following handwritten addition to Sheila's description of the prior history on the complaint portion of the TRO:[2] "Def told Plt in June, `you think you have it bad now just wait.'" The following *613 colloquy then ensued between the DVHO and Sheila:
HEARING OFFICER: You're saying he has a hand gun?
MS. JOHNSON: Yes.
HEARING OFFICER: And you're not sure where it is?
MS. JOHNSON: No.
HEARING OFFICER: Could it be at his residence?
MS. JOHNSON: It could be.
HEARING OFFICER: Could it be in his vehicle?
MS. JOHNSON: Could be.
HEARING OFFICER: Could it be with a third party?
MS. JOHNSON: Could be.
HEARING OFFICER: All right. When was the last time you heard about the hand gun?
MS. JOHNSON: In (indiscernible approx. two words) the day I was moving out.
HEARING OFFICER: And when was that?
MS. JOHNSON: I moved out April 3rd, so it could have been either April 5th or April 3rd when I was (indiscernible approx. two words).
HEARING OFFICER: All right. I'm going to have to do a warrant for the gun.
MS. JOHNSON: Okay.
HEARING OFFICER: The police will be authorized to search for any and all weapons.
MS. JOHNSON: (indiscernibles)?
HEARING OFFICER: The pocket knifehe's not even going to be allowed to carry a weapon under the terms of the order. I wouldn't normally do a warrant for that, only because he can get it anywhere. But the gun concerns me. So they'll be authorized to search his person, his residence. Can you give me the address again?
MS. JOHNSON: 76 (indiscernibles) Berlin.
HEARING OFFICER: Okay. Does he have any
other addresses where the gun could be?
MS. JOHNSON: (indiscernibles)
HEARING OFFICER: And where are they?
MS. JOHNSON: I believe they're in (indiscernibles) K-Mart at the Airport Circle, Pennsauken. I think it's (indiscernible approx. two words).
HEARING OFFICER: Okay. They're in his name?
MS. JOHNSON: I don't know. I don't even know (indiscernible approx. two words), but it's in a gray box (indiscernible approx two words).
HEARING OFFICER: All right. I'm going to have ... to specify, they can't search the whole facility. So in the name of Robert Johnson, it's a two story tudor?
MS. JOHNSON: Yes.
HEARING OFFICER: All right. His vehicle. What does he drive?
MS. JOHNSON: A burgundy Beretta.
HEARING OFFICER: Or any other location the officer believes weapons are located or have been moved.
The form of TRO recommended by the hearing officer contained various restraints, and prohibited defendant from possessing any and all weapons. Specifically, the order noted that defendant "HAS A HANDGUN (KEPT IN GRAY BOX, LOCATION UNKNOWN)." The hearing officer also completed the search *614 warrant portion of the TRO appearing on page 3 thereof,[3] that states:
(X) WARRANT TO SEARCH FOR AND TO SEIZE WEAPONS FOR SAFEKEEPING TO ANY LAW ENFORCEMENT OFFICER HAVING JURISDICTION: This order shall serve as a warrant to search for and seize any issued permit to carry a firearm, application to purchase a firearm and firearms purchaser identification card issued to the defendant and the following described firearms or weapons:
Any and all weapons 
 ______________________________
 ______________________________
1. You are hereby commanded to search for the above described weapons and/or permits to carry a firearm, application to purchase a firearm and firearms purchaser identification card, and to serve a copy of this order upon the person at the premises or location described as
 Def's person, Def's residence 7605 
 Tripoli Ave, Delair; & Storage 
 Units Public Storage Airport 
 Circle, Pennsauken in Name of 
 Robert Johnson (Gray Box); Def's 
 vehicle, Burg. Beretta 
2. You are hereby ordered in the event that you seize any of the weapons described above, to give a receipt for the property seized to the person from whom they were taken or in whose possession they were found or in the absence of such a person to leave a copy of this order together with such receipt in or upon the structure from which the property was taken.
3. You are authorized to execute this order immediately or as soon thereafter as is practicable (X) Anytime; () Other: or any other location the officer believes weapons are located or have been moved.
4. After execution of this order, you are ordered to forthwith make a prompt return to this Court with a written inventory of the property seized.
The completed form of TRO was then presented by the hearing officer to a Family Part judge, who reviewed the file and executed the TRO, as prepared by the hearing officer, scheduling the complaint for a final hearing on October 4, 2000. The TRO also recites, in a pre-printed portion thereof, in pertinent part:
SUFFICIENT GROUNDS AND EXIGENT CIRCUMSTANCES HAVE BEEN FOUND BY THIS COURT THAT AN IMMEDIATE DANGER OF DOMESTIC VIOLENCE EXISTS AND THAT AN EMERGENCY RESTRAINING ORDER IS NECESSARY PURSUANT TO R. 5:7A(b) AND N.J.S.A. 2C:25-28 TO PREVENT THE OCCURRENCE OR RECUR RENCE OF DOMESTIC VIOLENCE, INCLUDING THE SEARCH FOR AND SEIZURE OF FIREARMS AND OTHER WEAPONS, WHERE APPROPRIATE.
*615 Although there was no testimony taken at the suppression hearing, the following facts concerning the subject search and the seizure of evidence appear in the State's opposing brief.
Subsequent to the issuance of the TRO, on September 28, 2000, Officers Goschler, Kozarski and Plianthos, and Sergeant Nichols of the Pennsauken Police Department responded to defendant's residence at 7605 Tripoli Avenue to serve the TRO and execute the warrant portion. Defendant answered the door, the police officers explained they were there to serve him with the TRO and to execute the search warrant, "and the defendant consented to a search of his room." Defendant disputes that he gave his consent to the search of his bedroom and that disputed fact remains unresolved. The officers contend defendant denied that he presently had any firearm, but stated he had previously owned a handgun. Defendant denies he advised the officers that he previously owned a handgun; again, that dispute of fact remains unresolved. Upon inquiry, defendant retrieved a gray box, but the box did not contain a handgun.
During the ensuing search of defendant's bedroom, Officer Kozarski located a red box with the name "Robert" written in marker on the side. The box was located between the bed and night stand. Kozarski opened the red box and detected a strong odor of marijuana. The box contained two clear plastic bags with green vegetation that field-tested positive for marijuana. Defendant was arrested and charged with possession of marijuana. No weapons were found or seized during the search of defendant's residence or his storage units.
Defendant was charged in Camden County Indictment Number XXX-XX-XX with third-degree possession of marijuana in excess of one ounce with intent to distribute, contrary to N.J.S.A. 2C:35-5a(1) and 2C:35-5b(11) (count one), and third-degree possession of marijuana with intent to distribute within a school zone, contrary to N.J.S.A. 2C:35-7 (count two).
Defendant's motion to suppress was argued in the Law Division on May 11, 2001. In granting the suppression motion, the judge stated, in pertinent part:
On September 24th of 2000, the defendant in this matter obtained an ex parte temporary restraining order against his wife, Sheila Johnson. Four days later, September 28th of 2000, she obtained an ex parte temporary restraining order against him, which is the subject matter of this motion today.
Although we alluded to it, let me give something of a background here as provided by the briefs. In the complaint, Sheila Johnson states that the defendant has been harassing her for many months by calling her cell phone and leaving verbally abusive messages. The defendant cursed and called the victim names in front of the children.
And on September 24th of 2000, the defendant, according to the victim, ... was called at home and he called her a fucking cunt. In June, defendant told the victim, you have it bad now, just wait. This is all on the face of the temporary restraining order request. Marked on the top is cross-complaint, attached to both briefs.
Ms. Johnson also states in this complaint... under prior history, that in 1993 or 1994, the defendant grabbed her by the throat and choked her some six or seven years prior. Section nine of the restraining order complaint indicates that the defendant is in possession of a handgun kept in a gray box, location unknown. That section also indicates the defendant has a pocket knife on his belt.

*616 By the terms of the restraining order against the defendant, the police were directed to search for any and all weapons which the defendant could possibly have. The warrant directed ... that the Pennsauken Police were to search the defendant's person, the defendant's residence, 7605 Tripoli Avenue in Delair, storage units at the Airport Circle in the defendant's name, a gray box, and any and all locations the officers believed the weapons are located or have been moved.
On September 28, the officers went to the defendant's residence to serve the restraining order and to execute the search warrant. Officer Goschler knocked on the defendant's door and advised the defendant of the restraining order, that they were there to execute the search warrant ....
The defendant's person was searched, no weapons were recovered. The defendant retrieved a gray box, however, nothing of a weapons' nature was found in the box. This is where the dispute arises. The State contends that the defendant stated he did not own the home, but consented to the search of his room. The defense contends that neither the defendant nor his parents, the owners of the home, consented to the search of the residence.
I'm not going to deal with that issue right now. I think I have to stay right now with just my questions, then eventually we'll come back to that.
The officers did proceed to search the defendant's room. The defendant stated that he owned a handgun in the past, but left it at his previous residence. This is also agreed to by both sides?
[DEFENSE COUNSEL]: No, Judge, it is not agreed to.
All right, that's not. This is contained in the State's brief. I believe this will be consented to by both sides. Upon searching the defendant's bedroom, an officer observed a red box located between the bed and nightstand, with the name Robert written on the side of it. He opened the boxdepending on which side you're on, this will not be agreed to, with or without consent. The box contained two clear plastic bags of marijuana....
....
Relied on here is the Domestic Violence Act. I will not go into great detail about the importance of the Act, the lives it has saved, the people it has helped. It is part of the law....
In this matter, N.J.S.A. 2C:25-28 is what is relied on in issuing this search warrant, as well as [State v. Burdin, 313 N.J.Super. 468, 712 A.2d 1286 (Law Div. 1998); State v. Younger, 305 N.J.Super. 250, 702 A.2d 477 (App.Div.1997)]....
Let's go back to the statute in question, I read it on the record before. And the question is, does a Judge need reasonable cause or probable cause, in this Court's estimation, when issuing a search warrant for a weapon under a TRO? And did the Judge state with specificity the reasons for the search?
....
As I read this statute, a Judge can forbid one who is accused under a temporary restraining order from having a weapon. The Judge must specify the reasons for this, for the search when the Judge says someone cannot have a weapon.
The reasonable cause part of [N.J.S.A. 2C:25-28(j)], in this Court's determination, does not go to probable cause for the type of criteria needed in issuing the search warrant. It goes to where the Judge has reason to believe the weapon he is, or she is, ordering to be confiscated are located....

*617 Unlike a search warrant, the location of these weapons is usually provided by a lay person, someone who comes in and says they have been injured. They are usually frightened. They are usually confused. And they do not know the law most of the time. They could come in and name 20 places where they've seen the defendant with a weapon, including my home, your home, and everyone's home in this courtroom. A Judge could then say go and search the prosecutor's home. Go and search the Judge's home. Go and search any place this defendant has ever been with this gun. That cannot be permitted. Usually warrants are obtained by law enforcement, people who know the law. People who have observed a crime being committed. People who have worked with informants, who have proven themselves before a warrant is issued. Unlike a temporary restraining order.
So a Judge must have reasonable cause to believe where a weapon is located before the search is issued. This is to protect those who may have nothing to do with the weapon, and whose homes and sanctuaries should not be invaded by a lay person who is confused and may have just been injured.
But this statute, in my estimation, goes on and says that probable cause is still needed before someone could search for that weapon. When it says the Judge shall state with specificity the reasons for the search and seizure. The Judge shall ... relate the weapons to the allegations contained here, particularly in a TRO, where it is ex parte, it is one sidedwhy that person's health, safety and welfare are in jeopardy. Put another way, why is there probable cause to believe that a crime will be committed against this person, or perhaps others, not forgetting that a lot of times we have children involved here, and that a weapon should be confiscated from where the Judge reasonably has cause to believe it is located. That, in my estimation, is what this says.
I do not have anything before me that shows that this Judge, with specificity, indicated why this search was going to be performed. I'm not saying it didn't happen. It may very well have. There may be a recording from this proceeding. I do not have it in front of me. It has not been provided.
I then must look to the TRO, which I have in front of me, the complaint. And I must decide ... [t]he reasons for, with specificity, why the Judge ruled. I cannot do that here.
I have, number one, a cross-complaint, something that was precipitated after the defendant filed his TRO against his wife. Not that I doubt what happened, happened here. I will rely on this complaint in making my decision. I have, at best, what someone could perceive as a threat back in Juneyou think you have it bad now, just waitfor a TRO that was requested in September. That could refer to anything. I won't pay my child support. I won't pick the kids up. I won't come cut your grass like I've been doing. Who knows?
I have name calling here, which ends up with the final request for the ... restraining order with the F-C comment. I don't know what precipitated that. What brought that on? Did these people have an argument? Did they have a disagreement? Did the situation escalate? Sometimes people use dirty words. They're not nice. They have a Constitutional right to do that.
Something tells me there might have been a little bit more here. I don't know, looking at what I have in front of me. I then go on to read that there is *618 nothing in a detailed TRO, with extra handwriting on it, that even appears to be after the fact. He contacted the plaintiff on 9/24, all right, which means she said he has a TRO, he came in here. These are things she may have forgotten that she ... told them afterwards. This is the victim. Defendant has contacted plaintiff since his TRO was issued. Defendant told ... the victim something in June.
These are things that are handwritten in. I don't know how they got there, but this is a detailed TRO. And what do I have to look with ... that the Judge spoke with specificity when he issued the search warrant? Very little.
What I have is that there's a gun. Don't know how this information was obtained. There's nothing that says the gun was ever used against her, or she was ever threatened with it. I don't even know, looking back, what the harassing comments were on the cell phone. I look on to say well, the Judge could have gleaned from all this that she was afraid that this weapon could be used against her. But I continue to look on, and I see that he could pick his kids up. He could still have visitation. It's not supervised. And, at best, the two of them shouldn't speak to one another.
So the best I can determine here is the Judge thinks that these two people should not see one another, because he's supposed to contact her mom if there's a problem with picking up their kids.
This does not look to me, from the papers I have, and what I have in front of me, and what's been provided in this case, of a situation where the gun has been in the past, according to this, or will be in the future, used against her. I also don't know when she saw the gun. I have a timeliness problem here. And everyone knows, if someone came to me with this, this is a search warrant, and said I want a [warrant] issued, my first question would have to be, if she saw the gun, when was the last time she saw it? And if that information was stale, I could not issue a warrant based on that. There would be no probable cause.
The bottom line here is treating this, in essence, like a summary judgment motion by looking legally at the documents that were supplied. I do not find that the ... State has provided me with the requirement under the domestic violence law that the Judge, with specificity, indicated the reason for the search, i.e., probable cause relating this weapon to this domestic violence TRO. I find that necessary, I find it is fatal, and I am granting the motion to suppress....
....
Keeping in mind that if this matter is appealed and it is determined that I am incorrect, I guess we'll then just proceed factually on this matter to determine whether or not consent played any part in this and/or whatever anybody else was going to present today by way of testimony, because I never even got to that. I just addressed legally what I have in front of me.
The State moved for reconsideration of the May 11, 2001 decision, supported by an affidavit of the DVHO that outlined the procedures during the hearing concerning Sheila's application for a TRO and the substance of Sheila's testimony. With respect to those procedures followed in recommending that the Family Part judge issue the TRO, the DVHO certified, in pertinent part:
26. I then presented the Temporary Restraining Order form that the victim filled out and that I reviewed in the hearing with my handwriting on it, including the search warrant *619 provision to [the Family Part judge] for his review.
27. I told [the judge] that based upon the fact that the victim stated that the defendant had a handgun, that there is harassment, custody and visitation problems, and a past history of physical abuse, I recommended that a search warrant should issue in this case to search for weapons.
28. [The judge] then reviewed the paperwork and my verbal recommendation and signed the order.
The motion for reconsideration was argued in the Law Division on June 11, 2001. In denying the motion, the judge stated, in pertinent part:
Some TROs you could pick it up right away. There's violence. There's a gun being used. This was a woman who said her husband called her a name. Period. End of story. Had gone on for a couple of months. I had no idea what the specificity was that [the judge] used other than looking at the copy of the complaint and from the complaint I could not tell what his thought process was. I felt the defense met their burden. Here is what's been submitted. Here is what the State relied on. This is deficient as far as the criminal motion.
The State then presented me with absolutely nothing. They gave me an illegible copy of the cross-complaint. There were no witnesses. There was no transcript. There was no affidavit. There was nothing....
I do not feel it's appropriate for the State now to come up with what they should have come up with before which was giving me an opportunity to think how the Judge reached his conclusion which was through the affidavit or through probably wasn't even a transcript. I assume there's a transcript because looking at this detailed affidavit I'm assuming it didn't just come from notes. There must be a transcript, and I will presume, I don't know how the hearing officers work, they're new since I was in Family, but there probably is a transcript of what went on and I would have been able to hear the victim.
But I didn't have that then; I don't think it's appropriate to consider it now. I am not faulting [the Family Part judge]. What he did, with hindsight, seeing the affidavit, was appropriate, but at the time I had to decide this case I did not have the information from a lack of preparation as I feel it on behalf of the State for whatever reason. I had no choice. I did what was required in my estimation under the law and I will not change that now.
On appeal, the State argues that the trial court erred in granting defendant's motion to suppress. Specifically, the State argues the trial court applied an improper standard for review of the issuance of the search warrant; improperly shifted the burden of proof to the State; that there existed both probable cause and reasonable cause for issuance of the search warrant; and that the court should have permitted the State to establish defendant's consent to the search.

I
In considering these issues, we first turn to the applicable provisions of the Prevention of Domestic Violence Act. Among the purposes of the Act are the following:
It is the intent of the Legislature to stress that the primary duty of a law enforcement officer when responding to a domestic violence call is to enforce the laws allegedly violated and to protect the victim. Further, it is the responsibility of the courts to protect victims of *620 violence that occurs in a family or family-like setting by providing access to both emergent and long-standing civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public.
[N.J.S.A. 2C:25-18.]
As we have noted, in Cesare, supra, 154 N.J. at 399, 713 A.2d 390, our Supreme Court has made it clear that "[t]he Domestic Violence Act was intended to assure the victims of domestic violence the maximum protection from abuse the law can provide[,]" (quoting N.J.S.A. 2C:25-18 (emphasis added)), and that the Act was meant "`to ensure[] that spouses who were subjected to criminal conduct by their mates [have] full access to the protections of the legal system.'" (quoting Corrente v. Corrente, 281 N.J.Super. 243, 248, 657 A.2d 440 (App.Div.1995)). By way of further explanation, the Court stated, in pertinent part:
To reach these goals, the Act provides both emergency and long-term civil and criminal remedies and sanctions and encourages the "broad application" of those remedies in the courts of this State. N.J.S.A. 2C:25-18. In the criminal context, an abuser may be subject to arrest upon probable cause and, depending on the existence of various conditions, the seizure of any dangerous weapons he possesses and the revocation of any licenses or permits for the use, possession, or ownership of those weapons. N.J.S.A. 2C:25-21. In the civil context at issue here, the Act permits victims to file a complaint alleging the commission of an act of domestic violence and to seek emergency ex parte relief. N.J.S.A. 2C:25-28....
[Cesare, supra, 154 N.J. at 399-400, 713 A.2d 390.]
Accordingly, the legislative scheme of the Act is to provide the victim with protection from abuse at both the law enforcement and court levels when there is cause to believe that an act of domestic violence has occurred. The fact that an abuser's access to weapons can further endanger the victim of domestic violence is given recognition by the Act at both these levels.
At the law enforcement, criminal-offense level, N.J.S.A. 2C:25-21d(1) provides that when an officer is responding to an incident involving allegations of domestic violence:
d.(1) In addition to a law enforcement officer's authority to seize any weapon that is contraband, evidence or an instrumentality of crime, a law enforcement who has probable cause to believe that an act of domestic violence has been committed may:
(a) question persons present to determine whether there are weapons on the premises; and
(b) upon observing or learning that a weapon is present on the premises, seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury.

[Emphasis added.]
In addition, when a defendant who is charged with a crime or offense involving domestic violence is released on bail,
the court authorizing the release may as a condition of release issue an order prohibiting the defendant from having any contact with the victim, including, but not limited to, restraining the defendant from entering the victim's residence, place of employment or business, or school, and from harassing or stalking the victim or victim's relatives in any way. The court may enter an order prohibiting the defendant from possessing any firearm or other weapon enumerated in subsection r. of N.J.S.

*621 2C:39-1 and ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located. The judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order.

[N.J.S.A. 2C:25-26a (emphasis added).]
At the court level, when a plaintiff has filed a civil domestic violence complaint seeking an ex parte TRO, alleging that the defendant has committed an act of domestic violence,
[i]f it appears that the plaintiff is in danger of domestic violence, the judge shall, upon consideration of the plaintiff's domestic violence complaint, order emergency ex parte relief, in the nature of a temporary restraining order. A decision shall be made by the judge regarding the emergency relief forthwith.
[N.J.S.A. 2C:25-28g.]
With respect to the issue of weapons at the stage when the plaintiff has filed a civil complaint and seeks entry of an ex parte TRO, the Act further provides:
j. Emergency relief may include forbid-ding the defendant from returning to the scene of the domestic violence, forbidding the defendant to possess any firearm or other weapon enumerated in subsection r. of N.J.S. 2C:39-1, ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located and any other appropriate relief. The judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order.

[N.J.S.A. 2C:25-28j (emphasis added).]
N.J.S.A. 2C:25-29b(16) contains language identical to that contained in N.J.S.A. 2C:25-28j, authorizing the issuance of a search warrant as a form of relief at the final-hearing stage when the court finds that defendant has committed an act of domestic violence and issues a final restraining order (FRO).
Where the access to weapons by a defendant in a domestic violence case increases the risk of harm to the victim, the statutory scheme to remove firearms from the grasp of the defendant is clear. N.J.S.A. 2C:58-3c(6), for example, prohibits issuance of a handgun purchase permit or firearms purchaser identification card to any person who is subject to a FRO issued pursuant to N.J.S.A. 2C:25-29 that prohibits the person from possessing any firearm. 18 U.S.C.A. § 922(g)(8) makes it unlawful for any person who is subject to a court order that "restrains such person from harassing, stalking, or threatening an intimate partner ... and ... includes a finding that such person represents a credible threat to the physical safety of such intimate partner ... or ... by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner[,]" to possess any firearm. See State v. S.A., 290 N.J.Super. 240, 247, 250-51, 675 A.2d 678 (App.Div. 1996) (holding that a FRO issued under the Act satisfied all the criteria of 18 U.S.C.A. § 922(g)(8)(A)-(C), making it illegal for the defendant to possess firearms).
Accordingly, there is a strong public policy in this State of prohibiting access to firearms for those individuals determined to have committed acts of domestic violence, even on a prima facie basis, where their access to weapons enhances the risk of harm to the victim.
This policy gives recognition to the fact that firearm use in domestic violence incidents is becoming less and less unusual.
*622 Maria Kelly, Finding of Abuse, 23 Vt. L.Rev. 349, 361, (Winter 1998) (citing to Bureau of Justice Statistics, U.S. Dep't of Justice, Office of Justice Programs, No. NCJ-149259, Bureau of Justice Selected Findings, Domestic Violence: Violence Between Intimates 2, at 4 (November 1994)). Every year an estimated 1.7 million domestic violence attacks occur and in 1993, 88,000 of those attacks involved firearms. Melanie L. Mecka, Seizing the Ammunition from Domestic Violence: Prohibiting the Ownership of Firearms by Abusers, 29 Rutgers L.J. 607, 608 (Spring 1998). In New Jersey alone, there were 86,631 acts of domestic violence reported to the police in 1995, of which almost 20,000 of the victims had previously filed orders against the same offender, and 61 of those attacks eventually resulted in murder. Ibid. (citing to 1995 New Jersey Domestic Violence Uniform Crime Report, 1). The temporary seizing of weapons in a domestic violence dispute, even if the owner did not threaten or use the weapon in an unlawful manner "is in accord with the long-standing policy of this State to keep guns out of the hands of all dangerously unfit persons, criminal as well as non-criminal." Hoffman v. Union County Prosecutor, 240 N.J.Super. 206, 214, 572 A.2d 1200 (Law Div.1990) (citing Burton v. Sills, 53 N.J. 86, 248 A.2d 521 (1968)).
Inherent in the issuance of a TRO is a conclusion by the issuing judge that the order is necessary "to protect the life, health or well-being of a victim on whose behalf the relief is sought." N.J.S.A. 2C:25-28f. That requisite finding or conclusion is, in fact, contained in the conclusory, pre-printed form language of the September 28, 2000 TRO. Certainly, Sheila's testimony that defendant had access to a handgun, viewed in the light of the stated purposes of the Act to provide the victim with the maximum protection available under the law, supports the prohibition against weapon possession contained in the TRO. However, the conclusion contained in the pre-printed form language of the TRO that sufficient grounds exist for issuance of a search warrant is only supported, of record, by the content of the recommended TRO itself. The judge did not have the benefit of actually hearing Sheila testify, nor did he have an affidavit or summary executed by Sheila or the DVHO that set forth facts to support the conclusion that defendant's possession of weapons posed an enhanced or heightened risk of danger to Sheila. All the Family Part judge had was a proposed TRO that included the complaint portion executed by Sheila. In fact, even if the judge had a transcript or tape of Sheila's testimony before the DVHO, we note that Sheila was never asked whether she was fearful of defendant or whether she believed that defendant's access to a weapon posed a heightened degree of risk to her and, if so, why.
We find it necessary to note, however, that the fact that the alleged act of domestic violence itself did not involve the use, or threatened use, of a weapon, and that there was no testimony or evidence that defendant had previously used or threatened the use of a weapon against Sheila, would be an insufficient basis to conclude that defendant's possession of a weapon did not pose a danger to Sheila. The dynamics of domestic violence suggest the opposite, in that an isolated act of domestic violence often represents a snapshot of one act that forms only a part of a larger body of conduct of abusive behavior; accordingly, examination of the past history of abusive or threatening conduct in light of the totality of the circumstances is necessary. Cesare, supra, 154 N.J. at 402, 713 A.2d 390; Peranio v. Peranio, 280 N.J.Super. 47, 54, 654 A.2d 495 (App.Div. 1995). Stated another way, in a domestic *623 violence context, the absence of the use or threatened use of a weapon is not necessarily a useful barometer or predictor of future behavior vis-a-vis the future use of weapons by a defendant against the victim.
As our Supreme Court has commented, "those who commit acts of domestic violence have an unhealthy need to control and dominate their partners and frequently do not stop their abusive behavior despite a court order." State v. Hoffman, 149 N.J. 564, 585, 695 A.2d 236 (1997). Moreover, "[d]omestic violence victims who leave their abusers are justified in their continued fear because of the many cases of victims who are assaulted or killed by former partners." Ibid. It is hardly unusual for a perpetrator of domestic violence to use a weapon against a victim despite the absence of any prior indicia of violence involving a weapon. Accordingly, these known dynamics heighten the need to fully explore, even at the TRO stage, the prior history of domestic violence and the context in which the alleged act has occurred, particularly where it is discovered that the defendant possesses or has access to a weapon.
The Court has also recognized the reality "that in the area of domestic violence, as in some other areas in our law, some people may attempt to use the process as a sword rather than as a shield." Id. at 586, 695 A.2d 236. Viewing this case from the perspective that existed on September 28, 2000, on this record, it was virtually impossible to fully gauge the degree of peril facing Sheila. Without the benefit of receiving testimony and evidence, whether defendant's possession or access to weapons posed an actual danger to Sheila was, at best, guesswork. The context of the June 2000 statement, "you think you have it bad now just wait," attributable to defendant by plaintiff, again, on this record, was not evident.
We are mindful that "[d]omestic violence assault, rarely an isolated incident, is a crime of high recidivism rates, characterized by escalation of verbal and physical abuse over time. As this violence escalates, the likelihood that the violent incidents will involve the use of a weapon also increases." Alison J. Nathan, Exception and the Lautenberg Amendment, 85 Cornell L.Rev. 822, 854 (March 2000) (citing to Bureau of Justice Statistics, U.S. Dep't of Justice, Office of Justice Programs, No. NCJ-149259, Bureau of Justice Statistics Selected Findings, Domestic Violence: Violence Between Intimates 2, n. 6 (November 1994)).
However, any search authorized by warrant, including one issued pursuant to the Act, must pass constitutional scrutiny. As we have noted in the context of a warrantless search by police officers responding to a domestic violence call:
[T]he Domestic Violence Act is obviously subject to the Supremacy Clause of Article VI of the United States Constitution, and, therefore, just as obviously subject to the constraints imposed by the Fourth Amendment. The Act is also, of course, subject to the New Jersey constitutional guarantee against unreasonable searches and seizures afforded by N.J. Const. art. I, ¶ 7....
[State v. Younger, 305 N.J.Super. 250, 258, 702 A.2d 477 (App.Div.1997).]
The focus in this case is on the precise Fourth Amendment limitations and standards applicable to searches authorized by N.J.S.A. 2C:25-28j.
As we have noted, prior to issuance of an ex parte TRO, N.J.S.A. 2C:25-28f requires that the court find its "issuance is necessary to protect the life, health or well-being of a victim[.]" N.J.S.A. 2C:25-28g provides for the issuance of emergency ex parte relief in the nature of a TRO *624 where "it appears that the plaintiff is in danger of domestic violence[.]" The emergency relief available includes "forbidding the defendant to possess any firearm ... [and] ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located[.]" N.J.S.A. 2C:25-28j. That section further provides that "[t]he judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order." Ibid.
The primary governmental interest at stake in a search warrant issued pursuant to the Act is to further the legislative intent to provide the victim of domestic violence with the maximum protection available under the law. Under such circumstances, the analysis of the validity of the warrant and search cannot be equated with that applied to a search and seizure where the purpose is to secure evidence in a criminal prosecution.
These circumstances were addressed by Judge Chaiet in State v. Burdin, 313 N.J.Super. 468, 712 A.2d 1286 (Law Div. 1998). There, a domestic violence complaint was filed against the defendant by his girlfriend alleging that
the defendant had endangered her life "by throwing a brick through her windshield, and in the past chasing her in her vehicle with his vehicle, and making harassing phone calls also in the past." The complaint alleged criminal mischief. There was nothing in the complaint indicating that she was ever threatened with a gun. The complaint indicated there was a "silver semi-automatic pistol possibly located in [a] cubby hole over defendant's bed." The complaint listed defendant's address as 510 3rd Ave., Apartment 2, Asbury Park, New Jersey.
On March 28, 1997 the municipal court judge "found good cause to believe that plaintiff's life, health and well-being have been and are endangered by defendant's act(s) of violence" and issued a temporary restraining order pursuant to the Act. In the section of the order authorizing the search and seizure of the weapon pursuant to N.J.S.A. 2C:25-28j, the municipal judge described the firearm as a "silver semi-automatic pistol" and commanded the officers to search the premises described as 510 3rd Ave., Asbury Park, N.J. Apartment 2.
[Id. at 471, 712 A.2d 1286.]
In executing the search warrant in Burdin, several police officers went to the designated residence and observed the cubby hole described in the complaint, approximately five feet off the floor and directly located over defendant's bed. Ibid. While moving a pillow so as not to step on it, an officer observed a small quantity of cocaine lying on the bed where the pillow had been. Ibid.
In denying the defendant's motion to suppress the cocaine seized in his criminal prosecution for its possession, Judge Chaiet analyzed the search and seizure issue, as follows:
Under the facts of this case, even though plaintiff's [domestic violence] complaint indicated where the gun was "possibly" located, this court is satisfied that the municipal judge had "reasonable cause" to believe that a firearm was in defendant's apartment. Any doubt created by use of the word "possibly" was overcome by the specific description given by the plaintiff of the gun and its location. However, there was no probable cause to believe the gun was illegally possessed or that it was evidence of a crime. The plaintiff never indicated that the firearm was used against her in any act of domestic violence.
In the criminal context, a warrant may be issued only on a probable cause showing that [which] would lead a reasonable *625 person to believe that a crime has been committed and that evidence of that crime will be found in a particular place. The Constitution tells us that searches and seizures must issue on probable cause....
The question, therefore, is whether, absent probable cause, the order in this case can withstand constitutional scrutiny and be upheld as consistent with the Constitutions of the United States and New Jersey?
Searches undertaken to promote important state interests unrelated to the acquisition of evidence of criminality or in furtherance of criminal prosecution are, under appropriate circumstances, permissible under the Fourth Amendment....
The Legislature spoke clearly when it enacted "The Prevention of Domestic Violence Act of 1991." ...
"Protection of the victim [is] the clear and unequivocal message. Law enforcement personnel and the courts [are] encouraged to insure, indeed charged with insuring, the safety of all victims exposed to actual or potential acts of domestic violence of abuse." State v. Saavedra, 276 N.J.Super. 289, 292, 647 A.2d 1348 (App.Div.1994).
The Act provides various civil and criminal remedies which highlight the judiciary's role in insuring the safety of domestic violence victims. In this case, the police were taking steps to remove a firearm from the possession of a person in a potentially dangerous domestic violence situation. Their purpose was not to seek evidence of a crime.
Based on the authorities cited above, the court is satisfied that even without the traditional probable cause requirement having been met, the search under the facts and circumstances of this case passes constitutional scrutiny. A limited police entry is allowed to remove an item of potential danger in the volatile setting of domestic violence, especially when that item is a handgun.
The secondary issue is whether the municipal court judge in issuing the order complied with N.J.S.A. 2C:25-28j. The statute requires that "[t]he judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order." The only information the judge had before him was that a "silver semi-automatic pistol" was "possibly located in [a] cubby hole over defendant's bed." Based on that information and the fact that the municipal judge was satisfied that an act of domestic violence (criminal mischief) had occurred, the judge simply stated in his order that 510 3rd Ave., Asbury Park, NJ, Apartment 2, could be searched and the silver semi-automatic pistol seized.
This court finds that the mandates of the statute have been met. The judge in his general finding was satisfied that the plaintiff's life, health and well-being were endangered and that the police could search the apartment for the weapon. Although the information from the plaintiff was that the gun was possibly in the cubby hole, it was not unreasonable for the judge to expand the scope of the search for the weapon to the entire apartment. Considering the strong legislative goal to prevent potential acts of domestic violence, the municipal judge's order was sufficient. In actuality the municipal judge was presented with minimal information and his order could not say much more than it did. The information provided, that defendant possessed a handgun and that it was possibly located in a particular area, was sufficient to trigger a need to eliminate the potential danger to the *626 plaintiff. The Act mandated a search for her protection.
[Id. at 472-75, 712 A.2d 1286 (other citations omitted).]
We are in accord with Judge Chaiet's reasoning. Therefore, where there is reasonable cause to believe that, (1) an act of domestic violence has been committed by defendant, (2) the defendant possesses or has access to a firearm or other weapon enumerated in N.J.S.A. 2C:39-1r, and (3) defendant's possession or access to that weapon poses a heightened or increased risk of danger to the victim, then issuance of a search warrant as authorized by N.J.S.A. 2C:25-28j does not violate Fourth Amendment principles, assuming there is evidence of the requisite degree of specificity concerning the description of the weapon and its location and that information is contained in the warrant. Because the reason for issuance of such a warrant is to further the degree of protection provided to the victim of domestic violence based upon an assessment or prediction of future behavior, as opposed to seeking evidence of criminality, "reasonable cause," as opposed to "probable cause," is the barometer by which the appropriateness of the issuance of the warrant is to be judged.
Applying these principles to the facts presented in this case, although there may have been sufficient facts and information available to satisfy the judicial reasonable cause requirements we have outlined, here, the procedures employed were insufficient to establish their existence in the record. Sheila was in the courthouse and had testified before the DVHO. If requested, she was certainly available to testify before the judge. Moreover, the judge received no written summary, transcript or affidavit that would enable the judge to analyze whether there was reasonable cause to believe that defendant had access to a weapon and, if so, whether that access posed a danger or heightened risk of injury to Sheila. The State presented an affidavit of the DVHO to the Law Division judge and, in the record of this appeal, provided us with a transcript of the September 28, 2000 hearing before the DVHO. The Family Part judge had neither and certainly did not "state with specificity the reasons for and scope of the search and seizure authorized by the order." N.J.S.A. 2C:25-28j.
There was no testimony taken by the judge issuing the warrant that may have developed facts to support issuance of the warrant, including exploration of the context, import and meaning of defendant's alleged June 2000 statement to Sheila that, "you think you have it bad now, just wait." Conferences or conversations between the DVHO and the judge concerning the reasons for issuance of the search warrant were not of record, and we cannot speculate about the degree, quality or breadth of information orally provided by the DVHO to the judge. Therefore, any additional information obtained by the DVHO from Sheila, or any other source, that may have been conveyed to the judge in support of the issuance of the warrant, is not fully known, was not placed upon the record, and cannot form the basis for sustaining issuance of the warrant.
Certainly, from what appeared on the face of the complaint, the Family Part judge had "reasonable cause" to believe that an act of domestic violence had been perpetrated by defendant against Sheila, and that defendant was in possession of, or had access to, a firearm. However, there is an insufficient basis in the record for us to conclude, based upon the information made available to the Family Part judge, that defendant's access to the weapon created a heightened or increased risk of injury to Sheila. As we have noted, even *627 in the record before the DVHO there is an absence of any testimony by Sheila that she was in fear of defendant or, more particularly, that defendant's access to a weapon created additional risk of harm to her.
Given our conclusion that the requisite criteria for issuance of a warrant for the search of weapons is not present in this record, we need not address the issue of whether the warrant was sufficiently specific.

II
Our attention has been directed by counsel for amici curiae to the recent issuance of an administrative directive governing initial hearings in domestic violence cases conducted by DVHOs. Although this directive was not in effect at the time the FRO here was issued, in light of our ruling, we feel compelled to comment on the procedures adopted.
As part of the "Best Practices" effort, the Supreme Court recently approved "Operating Standards" for the DVHO Program, which are outlined in Administrative Directive Number 16-01, issued on December 14, 2001 by the Administrative Director of the Courts. Standard # 5F thereof provides:
The following provisions are applicable to cases involving the use or threatened use of weapons.
1. When a domestic violence complaint is taken in a manner that involves the use or threatened use of a weapon, or where the defendant possesses or has access to a firearm or other weapon described in N.J.S.A. 2C:39-1r, this information should be noted on the complaint and transmittal form that will be attached to the other paperwork forwarded to the DVHO;
2. If the DVHO finds that good cause exists for the issuance of a TRO, the DVHO should proceed to review and check off those restraints and reliefs being recommended;
3. During the hearing, when the DVHO reaches the section of the TRO prohibiting weapons possession, and after having determined that there are weapons to be seized, the DVHO should ask for as detailed a description as possible concerning the type and number of weapons, and their specific location(s);
4. If the DVHO determines that there is probable cause for seizure, the DVHO should note this on the record and then should:
a. Complete the weapons seizure affidavit form [Attachment] based on Plaintiff's testimony, including details about the weapon(s) to be seized and the likely locations(s) of the weapon(s), as well as the basis for Plaintiff's belief that such weapons are in Defendant's possession or are accessible to Defendant;
b. Review the contents of the affidavit with Plaintiff [on] the record and have Plaintiff sign the affidavit; the DVHO should witness Plaintiff's signature;
c. Complete the warrant portion of the TRO with specificity regarding the weapon(s), location(s) of same, and any other instructions to law enforcement;
d. Once the TRO hearing is completed, the recommended TRO, along with the Weapons Seizure Affidavit, should be presented to the appropriate judge for review (including specific review of the affidavit and warrant section of the TRO) and signature. The probable cause determination regarding weapons *628 seizure should be placed on the record, along with the docket number and other identifying case information;
e. If the judge does not concur with the TRO as recommended, or wishes to take testimony directly from the victim, or if the DVHO finds no basis for the issuance of the TRO or a lack of probable cause for weapons seizure and Plaintiff requests a hearing de novo on either determination, the case should be handled as an excluded case and forwarded to the judge for a hearing de novo.
The "Attachment" referred to in Standard # 5F(4)(a) is an "Affidavit in Support of Domestic Violence Search Warrant." As noted in the applicable Standard, where there is reason to believe that defendant's possession of a weapon places the plaintiff at risk for harm, facts are elicited from the plaintiff by the DVHO and are placed into the affidavit, which is then signed and attested to by the plaintiff, and ultimately presented to the judge, along with the file and proposed TRO. In addition to containing specific information concerning the identification and location of the weapons, the pre-printed language of the affidavit recites in paragraph 3 thereof "that the defendant is in possession of a weapon(s) that I reasonably believe would expose me to a risk of serious bodily injury."
We question the procedural wisdom of a policy that permits a DVHO, as opposed to a judge, to conduct domestic violence hearings that involve consideration of the issuance of a search warrant. As we understand the DVHO procedure,[4] the plaintiff provides testimony under oath on the record before the DVHO. This includes cases that involve an allegation that the defendant has access to a weapon. If the DVHO concludes there is jurisdiction; that the plaintiff has provided prima facie evidence of the commission of an act of domestic violence by the defendant; that an order is necessary to protect the life, health or well-being of the plaintiff; and it appears that the plaintiff is in danger of domestic violence, then the DVHO completes a proposed TRO that constitutes the recommendations of the DVHO, and presents the domestic violence file and proposed order to a Superior Court judge for review and consideration.
In accordance with paragraph 4 of Standard # 5F of Directive 16-01, where the DVHO determines there is probable cause for the seizure of a weapon, the "Affidavit in Support of Domestic Violence Search Warrant" is completed based upon the plaintiff's testimony, is sworn to and signed by the plaintiff, and becomes part of the information provided to the judge to consider when determining whether it is appropriate to execute a TRO that also contains a search warrant for seizure of the weapon. The referenced pre-printed form language of paragraph 3 of the plaintiff's affidavit does not call for insertion of those facts upon which the asserted conclusion contained in that paragraph are based. Although the DVHO presumptively heard plaintiff testify to those facts, there is no memorialization of those facts contained in the affidavit for review by the judge being asked to consider execution of the proposed search warrant. We recognize that such facts may be evident from the face of the domestic violence complaint and information contained in the court file, *629 and that the judge always has the option of taking testimony directly from the victim.
However, in our view, consideration should be given to either requiring that a judge take direct testimony from the plaintiff whenever a DVHO recommends issuance of a search warrant, or that the form "affidavit" be revised in a manner designed to elicit the precise facts constituting the basis for the conclusion that the defendant's possession of weapons expose the plaintiff to a risk of serious bodily injury. We express this concern, not only because of the procedural deficiencies that led to the result in this case, but because it is axiomatic that the factual findings underpinning conclusions must be made, and must be evident from the record. See R. 1:7-4(a). Stated another way, if there is reason to believe that defendant's possession of a weapon exposes the plaintiff to a risk of serious bodily injury, the facts upon which that conclusion is based must be articulated on the record.
Alternatively, a policy that would require judges to directly hear domestic violence complaints where weapon seizure is sought through issuance of a search warrant pursuant to N.J.S.A. 2C:25-28j would provide a greater degree of assurance that constitutional principles, including both the reasonable cause and specificity requirements, are adhered to. Such a policy would provide the judge with direct testimony from the plaintiff that would include not only the ability to ask probing questions but also to directly assess the credibility and demeanor of the witnesses. Such observations and the "feel of the case" are difficult to convey through review of an executed form affidavit devoid of facts to support its conclusory language.
Affirmed.
NOTES
[1] When a domestic violence complaint is filed in the Family Part, plaintiffs are given the option of having their case heard by a DVHO, a specially-trained hearing officer, who receives the sworn testimony of plaintiff on the record and then makes recommendations to a Superior Court judge as to the issuance and content of a TRO. Only a Superior Court judge, upon review of the file and recommended order, can issue a TRO. DVHOs do not conduct final hearings or two-party proceedings.
[2] The TRO is actually a five-page consolidated form that contains several parts, including the actual domestic violence complaint executed by the plaintiff; the restraining order provisions of the temporary order; a search warrant provision for the seizure of weapons; a notice provision to the defendant concerning required compliance and right to appeal; a notice requiring both parties to appear in the Family Part for a final hearing; and a return of service portion.
[3] Although not contained in the record, we note that a review of the minutes of various meetings of the Supreme Court Statewide Domestic Violence Working Group indicates that as of September 28, 2000, DVHOs were not authorized to hear those domestic violence cases where consideration was being given to issuance of a search warrant for the seizure of weapons; rather, at that point in time, the issue of whether a search warrant should issue was to be presented to a Family Part judge for testimony from the victim and any other witness presented. The wisdom of that policy is evident from the dilemma created by failure to adhere to it.
[4] Although contained in this recently-promulgated directive, for some reason not apparent to us, the procedures applicable to DVHOs are not ascertainable by reference to a Court Rule, as with Child Support Hearing Officers, see R. 5:25-3, Juvenile Referees, see R. 5:25-2, Juvenile Conference Committees, see R. 5:25-1, or Court Appointed Special Advocates, see R. 5:8C. Indeed, DVHOs are not mentioned in R. 5:7A, the Rule governing domestic violence cases.