STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. PATRICK J. WALTZ, STEVEN R. DOWD AND GARY M. HAYWARD, DEFENDANTS-RESPONDENTS.

Argued May 9, 1972—Decided June 26, 1972.

84

Mr. *John Lee Madden,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*Mr. Dominick J. Ferrelli,* Prosecutor of Burlington County, attorney; *Mr. John Lee Madden,* Assistant Prosecutor, on the brief).

Mr. *Alfred J. Luciani,* Deputy Attorney General, argued the cause for George F. Kugler, Jr., Attorney General of New Jersey, amicus curiae (*Mr. Alfred J. Luciani,* Deputy Attorney General, of counsel and on the brief).

Mr. *Stuart Ball* argued the cause for defendants-respondents (*Messrs. Ball, Broege, Fogel & Weinglass,* attorneys).

PER CURIAM. Defendants were charged with possession of a legendary drug without a prescription in violation of *N. J. S. A.* 2A:170–77.8 (a disorderly persons offense) and possession of a narcotic drug in violation of *N. J. S. A.* 24:18–4* (an indictable offense). The Burlington County Grand Jury refused to indict the defendants and the disorderly persons charge was returned to the Municipal Court of Mount Laurel Township for disposition. Prior to trial defendants moved in the Superior Court to suppress evidence obtained from the vehicle they occupied at the time of their arrest. *R.* 3:35–7(a). The motion was denied and defendants appealed to the Appellate Division. That Court

---

*Now superseded by *N. J. S. A.* 24:21–19 and 20, *L.* 1970, c. 226.

in an unreported opinion reversed, holding that the motion should have been granted. We certified on the State's application. 59 *N. J.* 434 (1971).

Detective William Matthews of the New Jersey State Police was the only witness at the suppression hearing. He testified that on July 15, 1969, he observed an old van truck with California license plates traveling north on the New Jersey Turnpike in Mount Laurel "at an apparent high rate of speed." After clocking the speed of the van for some time he stopped it, intending to issue a summons for speeding. He left his car and approached the van on the passenger side, away from the flow of traffic. There were two occupants in the front seat, defendant Hayward, the driver, and defendant Dowd. Both occupants had what the officer described as "long hair." He asked Hayward for his driver's license and registration. Although it was dusk the officer said it was light enough to see a small, white bottle on the floor of the vehicle on the passenger's side. He asked the driver if the bottle was his and, according to the officer, the driver said he did not know. The officer asked the occupants to get out of the car. He picked up the container which he identified as a white, plastic Bufferin bottle. By looking through the outside of the closed bottle he could see that it contained something other than ordinary Bufferin tablets, *i. e.,* "grayish" pills and a piece of aluminum foil. He opened the bottle and discovered five white pills, two small gray pills, and vegetation wrapped in foil. The officer believed the pills and vegetation to be narcotics and thus arrested the driver and passenger.

After arresting Hayward and Dowd, Officer Matthews searched the entire van, discovering a third occupant, defendant Waltz, in the back. He also found a smoking pipe, a small amount of vegetation which he thought to be hashish and three bottles and a box containing pills which he believed to be narcotics. Waltz was then arrested.

It is undisputed that all the materials seized during the search of the van constituted prohibited drugs.

The officer testified that he had been with the State Police for five years and that he had received special training in the narcotics field. He said the defendants made no suspicious movements, but his experience and training led him to believe the Bufferin bottle could be used as a container for narcotics. It was, according to the officer, similar in size and nature to bottles which he had previously found to contain narcotics.

Officer Matthews also testified the defendants' appearance, including their long hair, and the type vehicle in which they were riding contributed to his suspicion that the bottle contained narcotics.

Defendants argued below, as they do here, that the search and seizure violated their rights under the Fourth Amendment because there was no probable cause for the officer to believe that a crime was being committed. We disagree.

■ ■ Probable cause is the minimal requirement for a reasonable search permitted by the Constitution. See *Chambers v. Maroney,* 399 *U. S.* 42, 51, 90 S. Ct. 1975, 26 *L. Ed. 2d* 419, 428 (1970). It is an elusive concept, incapable of being precisely defined. It is more than mere naked suspicion but less than legal evidence necessary to convict. *State v. Mark,* 46 *N. J.* 262, 271 (1966); accord *State v. Dilley,* 49 *N. J.* 460, 463–464 (1967). It is not a technical concept but rather one having to do with "the factual and practical considerations of every day life" upon which reasonable men, not constitutional lawyers, act. *Brinegar v. United States,* 338 *U. S.* 160, 175, 69 S. Ct. 1302, 1310, 93 *L. Ed.* 1879, 1890 (1949); see *State v. Contursi,* 44 *N. J.* 422, 431 (1965). It has been described by this Court as a "well grounded" suspicion that a crime has been or is being committed. *State v. Burnett,* 42 *N. J.* 377, 387 (1964).

■ With the above principles in mind, we are satisfied that the search here was constitutionally permissible. The officer had a right and indeed the duty to stop the speeding

vehicle. He could properly look into the van and view its interior. Thus, he was in a position in which he had a right to be when he noticed the Bufferin bottle on the floor of the van. Through his training and experience in the area of narcotics the officer knew that such containers are often used to conceal illegal drugs. This knowledge together with the unusual position of the bottle undoubtedly created an apprehension of wrongdoing in the officer's mind. Ordinarily, a medicine bottle would not be placed on the floor of a vehicle and it is not unlikely that a bottle containing illicit drugs would be thrown there upon the approach of a police officer. The officer's suspicion, already aroused, was understandably heightened when he received an evasive answer to his inquiry as to the owner of the bottle. A search by an experienced officer presented with these facts is one based upon a well-grounded suspicion that a crime was being committed. We think Officer Matthews acted reasonably when he picked up the bottle to determine its contents. In this regard we note that the officer, rather than immediately opening the bottle, first looked through its outside to determine its contents. Only after he saw something ("grayish" pills and aluminum foil) which to the trained eye might well be narcotics did he open the bottle.

■ Of course, once the officer found what he thought to be narcotics in the bottle probable cause existed to arrest the occupants and search the entire van. Defendants do not contend, nor could they, that it was necessary for the officer to obtain a warrant to conduct a search of the vehicle. Because of its mobility a motor vehicle which has been stopped on a highway may be searched without a warrant when probable cause exists. *Chambers v. Maroney, supra*; *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925).

■ We hold that the evidence is admissible because it was seized during a search of a motor vehicle based upon probable cause.

■ ■ A word must be added concerning the fact that the officer's suspicions as to whether illegal drugs were in the bottle were aroused by the appearance of the defendants and the type of vehicle they were driving. Such factors should not and must not play a role in crime detection. It would be an oppressive society which permits the physical characteristics of a person or his property to serve as a contributing factor in forming a belief that that person is a criminal. However, since we find Officer Matthews had probable cause stemming from other grounds, his testimony that the defendants' appearance and the nature of their vehicle contributed to his belief that the bottle contained illegal drugs does not invalidate the search. See *State v. Zito,* 54 *N. J.* 206, 212-213 (1969).

The judgment of the Appellate Division is reversed and the judgment denying the motion to suppress is reinstated.

*For reversal and reinstatement*—Chief Justice WEIN-TRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.