817 A.2d 364 (2003)
358 N.J. Super. 151
STATE of New Jersey, Plaintiff-Appellant,
v.
Frank G. PERKINS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 18, 2003.
Decided March 10, 2003.
*366 John G. Laky, Warren County Prosecutor, attorney for appellant (Leeann Cunningham, Assistant Prosecutor, of counsel and on the brief).
Lee S. Trumbull, Convent Station, attorney for respondent.
Peter C. Harvey, Acting Attorney General, attorney for Amicus Curiae Attorney General of New Jersey (Christine A. Hoffman, Deputy Attorney General, of counsel and on the brief).
Before Judges PETRELLA, LINTNER and BILDER.
*365 The opinion of the court was delivered by LINTNER, J.A.D.
On June 19, 2002, a Warren County Grand Jury returned an indictment charging defendant, Frank G. Perkins, with third-degree unlawful possession of an assault weapon, N.J.S.A. 2C:39-5f. Defendant's motion to suppress the seized firearm was granted. We granted the State's motion for leave to appeal on November 12, 2002. We now affirm.
The facts are substantially undisputed. At 8:21 p.m. on January 24, 2002, defendant's wife called 911 complaining that her husband "smacked" her in the head with a telephone. She told the operator that her husband had been drinking and that he "has a lot of weapons" because he is a gun collector. She informed the operator that her husband's gun collection was located in a front bedroom but that he also may have had a firearm in the back bedroom where he was located at the time. The information was relayed to the Blairstown Township Police Department.
Sergeant Daniel Henderson, along with Officers Tom Ellis, Steven Browns and Tony Zeremba, responded to defendant's house. The victim, who appeared to be very upset, met them at the front door. She had a red mark on the right side of her face. Browns and Zeremba stayed with the victim while Henderson and Ellis proceeded to the back bedroom to look for defendant. Henderson and Ellis drew their weapons because they were told that defendant might be armed. They found defendant in bed, and he acted surprised to see them. Henderson told defendant why they were there, and defendant admitted his wife's version of the events. Believing that there was a weapon in the bedroom, they escorted defendant downstairs to the kitchen. Both Henderson and Ellis testified that they smelled alcohol on defendant's breath.
Browns then conducted an investigation of the house, during which he located defendant's gun collection consisting of approximately eighty-five firearms. The *367 firearms were not secured in a safe but were leaning up against three of the walls, pointing upwards toward the ceiling. There were also some knives and swords located on a glass shelf, as well as some handguns and ammunition on a shelf in the closet. After checking with the Prosecutor's Office, Henderson directed that the guns, as well as any other weapons in the house, be taken into custody for safekeeping pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. Neither the police nor the prosecutor sought a warrant for the seizure of the weapons. Acting upon information supplied by the victim, the police also investigated a gun safe located in the garage, but Henderson could not recall if the safe was locked or if they seized any guns from the safe.
Although the victim refused to seek a restraining order, she gave a voluntary statement at headquarters, which provided more details about how the incident precipitated. According to the victim, she had let their two dogs outside that night, and they ran away for three hours. As a result, her husband became "stressed out," had "too much to drink" and "became verbally abusive." He told her that she "wasn't a good wife[,] that he was an unhappy husband, [and] that [she] didn't care if he was unhappy." She asked him why he was unhappy, and he told her "to look in the mirror, just look at yourself in the mirror and you'll know." He then began to question her about sexual abuse she suffered as a child. She then threatened to call his ex-son-in-law and current business partner, "Jimmy ... to perhaps talk some sense into him." Defendant then "went to hit [her] in the face area and ... pushed the telephone receiver into [her] right eye causing it to become red and tear." She then called the police.
One of the guns seized from defendant was a .30 caliber M-1 Carbine, a United States military rifle. The M-1 Carbine is classified as an "assault firearm" under N.J.S.A. 2C:39-1w(1). On February 21, 2002, the Prosecutor's Office requested that the United States Bureau of Alcohol, Tobacco and Firearms (ATF) conduct a trace of the firearm. On March 20, 2202, the trace was received confirming that the firearm was in fact a military weapon.
The order memorializing the suppression of the seized weapon was issued by the motion judge on September 24, 2002. The order also provided that any items seized and determined to be contraband be destroyed in accordance with law and that any application for the return of the remaining firearms and knives be governed by the Act. On November 12, 2002, the judge amplified his decision, R. 2:5-1(b), stating that "the seizure could be upheld to advance the purposes of the Domestic Violence Act but that the evidence which was seized, in violation of all of the defendant's Fourth Amendment rights, could not be used in a criminal prosecution." He further stated that "there was absolutely no probable cause to justify the seizure on Fourth Amendment grounds."
On appeal, the State raises the following point:
THE TRIAL COURT ERRED IN SUPPRESSING THE EVIDENCE PROPERLY SEIZED UNDER THE PLAIN VIEW EXCEPTION TO THE WARRANT REQUIREMENT DURING A SEIZURE AUTHORIZED BY N.J.S.A. 2C:25-21d.
The Amicus brief filed by the Attorney General raises the following points:
POINT I
THE SEIZURE OF WEAPONS PURSUANT TO N.J.S.A. 2C:25-21d(1) OF THE "PREVENTION OF DOMESTIC VIOLENCE ACT" IS CONSTITUTIONALLY *368 PERMISSIBLE UNDER THE FOURTH AMENDMENT.
POINT II
EVIDENCE OF CRIMINALITY MAY BE PROPERLY SEIZED UNDER THE PLAIN VIEW EXCEPTION TO THE WARRANT REQUIREMENT DURING SEARCHES AUTHORIZED BY N.J.S.A. 2C:25-21d(1).
We begin our analysis with the applicable provisions of the Act. N.J.S.A. 2C:25-28j permits a Family Part judge to order emergent relief that "may include... ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located.... The judge shall state with specificity the reasons for and scope of the search and seizure authorized by the order." N.J.S.A. 2C:25-21d(1) and (2) provide the following alternative means by which a law enforcement officer is authorized to seize and retain weapons.
(1) In addition to a law enforcement officer's authority to seize any weapon that is contraband, evidence or an instrumentality of crime, a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed may:
(a) question persons present to determine whether there are weapons on the premises; and
(b) upon observing or learning that a weapon is present on the premises, seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury.
(2) A law enforcement officer shall deliver all weapons seized pursuant to this section to the county prosecutor and shall append an inventory of all seized weapons to the domestic violence report.

[N.J.S.A. 2C:25-21d(1) and (2).]
Searches and seizures conducted pursuant to these provisions do not run afoul of the Fourth Amendment's guarantees because they are "undertaken to promote legitimate state interests unrelated to the acquisition of evidence of criminality or in furtherance of a criminal prosecution." State v. Johnson, 352 N.J.Super. 15, 18, 799 A.2d 608 (App.Div.2002); see also Ferguson v. City of Charleston, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001); Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The applicable state interest under the Act is to ensure "the safety of all victims exposed to actual or potential acts of domestic violence or abuse." State v. Saavedra, 276 N.J.Super. 289, 292, 647 A.2d 1348 (App.Div.1994).
The Fourth Amendment of the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized.

[U.S. Const. Amend. IV.]
Article I, Paragraph 7 of the New Jersey Constitution, which is essentially identical, provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

[N.J. Const. art. 1 par. 7.] *369 Although both constitutional provisions similarly protect against unreasonable searches and seizures, our Supreme Court has held that defendants accused of crimes in New Jersey have greater protection under Article 1, Paragraph 7 of our constitution than that afforded by the Fourth Amendment. See Joye ex rel. Joye v. Hunterdon Cent. Reg'l High Sch., 353 N.J.Super. 600, 610-11, 803 A.2d 706 (App. Div.2002).
Under the Fourth Amendment, searches are proscribed when they are unreasonable. Skinner, supra, 489 U.S. at 619, 109 S.Ct. at 1414, 103 L.Ed.2d at 661. Reasonableness "depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381, 398 (1985). "A court must balance the encroachment on an individual's Fourth Amendment interests against the advancement of legitimate state goals." State in the Interest of J.G., 151 N.J. 565, 576, 701 A.2d 1260 (1997). Where "a search is conducted in furtherance of a criminal investigation, the balance is most often tipped `in favor of the procedures described by the Warrant Clause of the Fourth Amendment' ... finding that the search `is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause'". Id. at 576-77, 701 A.2d 1260 (quoting Skinner, supra, 489 U.S. at 619, 109 S.Ct. at 1414, 103 L.Ed.2d at 661). What is generally needed is a "showing of individualized suspicion to conclude that a warrantless search is reasonable." Id. at 578, 701 A.2d 1260.
Where, however, there are "`special needs, beyond the normal need for law enforcement,'" which render "`the warrant and probable cause requirements impracticable,'" a search may nevertheless pass constitutional muster absent any suspicion. Id. at 578, 701 A.2d 1260 (quoting Skinner, supra, 489 U.S. at 619, 109 S.Ct. at 1414, 103 L.Ed.2d at 661). Such searches are permissible because they promote an important State interest and do not place the offender at additional risk because the results are not intended to facilitate a criminal prosecution. Id. at 578-79, 701 A.2d 1260.
Applying these principles, we conclude that the search and seizure was valid under N.J.S.A. 2C:25-21d(1). First, the officers had probable cause to believe that defendant committed an act of domestic violence. Probable cause is defined as "a `well grounded' suspicion" that a certain event has occurred. State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972). This is not a "technical concept." Ibid. Rather, it is based on "`the factual and practical considerations of every day life' upon which reasonable men, not constitutional lawyers, act." Id. at 87, 293 A.2d 167 (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949)). Here, the 911 operator relayed the victim's version of the events to the police, and, upon arriving at the house, they were met by the victim, who was visibly upset and had a red mark on the side of her face. Such information provided the officers with the necessary probable cause to believe that an act of domestic violence had occurred.
Secondly, the officers had reasonable cause to believe that defendant had access to weapons. Although the Act does not define "reasonable cause," it is akin to "reasonable suspicion," which New Jersey courts have found to be a more relaxed standard than "probable cause." State v. Arthur, 149 N.J. 1, 8, 691 A.2d 808 (1997). An officer must be able to "`point to specific and articulable facts which, taken together with rational inferences from *370 those facts, reasonably warrant [the] intrusion.'" State v. Citarella, 154 N.J. 272, 278, 712 A.2d 1096 (1998) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)) (alteration in original). Here, the victim told the 911 operator that defendant had a collection of guns and may have had a handgun with him in the bedroom.
Thirdly, the officers had reasonable cause to believe that defendant's access to the weapons posed a "heightened risk of injury to the victim." Johnson, supra, 352 N.J.Super. at 20, 799 A.2d 608. Under this factor, it is not necessary to demonstrate that the defendant used or threatened to use a weapon against the victim because "the absence of the use or threatened use of a weapon is not necessarily a useful barometer or predictor of future behavior vis-a-vis the future use of weapons by a defendant against the victim." Id. at 35, 799 A.2d 608. Here, defendant, who had admitted striking his wife with the phone, had immediate access to weapons, thus enhancing the risk to the victim with whom he resided. Id. at 33, 799 A.2d 608. Under these circumstances, the temporary seizure of these weapons, even in the absence of threatened use by the owner, was necessary to protect the victim from the "risk of serious bodily injury." N.J.S.A. 2C:25-21d(1)(b); see also Johnson, supra, 352 N.J.Super. at 33, 799 A.2d 608.
Finally, under the totality of the circumstances, the officers acted reasonably. The evidence shows that the officers searched only the areas where the victim informed them that weapons may be located: the front bedroom, the back bedroom and the gun safe in the garage. They did not ransack the house nor did they seize items that were not readily ascertainable as weapons. Under the criteria set forth above, the seizure of these weapons complied with the Fourth Amendment.
This finding does not end our inquiry, however. We turn our attention to the question of whether the illegal weapon seized from defendant's home is admissible in his criminal trial. The State contends that, because the search pursuant to N.J.S.A. 2C:25-21d(1) is constitutionally permissible, the evidence seized should not be excluded. We disagree. As we have previously indicated, the policy that gives rise to the seizure of weapons under the Act is grounded upon legitimate State interests unrelated to the acquisition of evidence of criminality or in furtherance of a criminal prosecution. The authorization for the search under N.J.S.A. 2C:25-21d(1), like that authorized by N.J.S.A. 2C:25-28j, is to protect a victim of domestic violence from further violence, not to discover evidence of criminality. Johnson, supra, 352 N.J.Super. at 19, 799 A.2d 608. The statistics bear out the legitimacy of the State's interest as far too many disputes that fall within the purview of the Act escalate and ultimately result in someone being murdered or seriously injured. Id. at 33, 799 A.2d 608.
Thus, absent, for example, a threat to use a weapon or suspicion that a particular weapon is itself illegal or illegally possessed, the search and resulting seizure, like any special needs search, is not based upon suspicion that a crime has been committed, but instead countenanced by a State interest, civil in nature, to protect potential victims, thereby going beyond the normal purview of law enforcement. See State in the Interest of J.G., supra, 151 N.J. at 579, 701 A.2d 1260. These conclusions are consistent with the provisions of N.J.S.A. 2C:25-21d(1), which permit a seizure "in addition to a law enforcement officer's authority to seize weapons that are contraband, evidence or an instrumentality *371 of crime." We hold, therefore, that unless the factual circumstances justify a search under a recognized exception to the warrant requirement, a search and resulting seizure under N.J.S.A. 2C:25-21d(1) and (2) is deemed reasonable and thereby passes constitutional muster so long as the results are not used to facilitate a criminal prosecution.
The State also contends that the exclusionary rule does not apply here because the illegal weapon, i.e., contraband, was discovered in plain view while the officers were properly in defendant's house conducting a search pursuant to the Act. We agree that evidence that is inadvertently discovered in plain view in the course of an otherwise valid search is subject to seizure and is admissible in a criminal prosecution. State v. Perry, 124 N.J. 128, 148, 590 A.2d 624 (1991); State v. Bruzzese, 94 N.J. 210, 237-38, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The record, however, reflects that the officers seized all eighty-five firearms upon advice of the prosecutor's office pursuant to N.J.S.A. 2C:25-21d(1) and (2). The M-1 carbine was not identified separately as contraband by the officers at the time the weapons were seized or because it was in plain view. Moreover, there is no evidence to support the conclusion that the criminal nature of the illegal weapon was "immediately apparent" to the officers such that they recognized its criminal nature at the time it was seized. State v. Johnson, 171 N.J. 192, 207, 213, 793 A.2d 619 (2002); State v. Crumb, 307 N.J.Super. 204, 246-47, 704 A.2d 952 (App.Div.1997), certif. denied, 153 N.J. 215, 708 A.2d 66 (1998); see also United States v. Szymkowiak, 727 F.2d 95, 98-99 (6th Cir.1984). Simply stated, the facts do not establish the necessary requirements for a constitutionally permissible plain view seizure.
Accordingly, we affirm.