**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4697-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BORN I. GRAHAM, a/k/a
BORN ISLA GRAHAM,

    Defendant-Appellant.

_____

Submitted September 24, 2019 - Decided November 21, 2019

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-10-1522.

Alan Dexter Bowman, attorney for appellant.

Mark Musella, Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized in a warrantless search, defendant Born I. Graham was found guilty by a jury of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree transportation of a large capacity ammunition magazine, N.J.S.A. 2C:39-9(h); and a second-degree certain persons offense, N.J.S.A. 2C:39-7(b). Defendant appeals from the denial of his motion to suppress the gun and magazine found in his car.[1] Finding no basis to disturb Judge Foti's factual findings or legal conclusions, we affirm defendant's conviction.

The arresting officer testified at the suppression hearing that he stopped defendant's car in Paramus late one evening in March 2014 because it had a

---

[1] Defendant has not appealed his sentence. The State notes, however, that the sentences imposed on the unlawful possession and certain persons convictions are inconsistent with the code. Defendant was sentenced on the unlawful possession charge to seven years in State prison, five of which are to be served without eligibility for parole, although the maximum parole ineligibility period is forty-two months. See N.J.S.A. 2C:43-6(c). On the certain persons offense, the court sentenced defendant to five years in State prison with a forty-two month parole ineligibility term, although the minimum term imposed by statute is five years, "during which the defendant shall be ineligible for parole." N.J.S.A. 2C:39-7(b)(1).

The State contends "[i]t is clear" the judge "merely imposed the sentences on the wrong count" and seeks a remand to amend the judgment of conviction to reflect what it believes was the judge's intent. As the sentences imposed on those counts are illegal, we will effect a limited remand to allow correction of the sentences in conformance with the code, based on the record at the prior sentencing. See State v. Randolph, 210 N.J. 330, 352 (2012).

A-4697-17T2

broken headlight and tinted front windows. When defendant rolled down one of those windows, the officer smelled a strong odor of raw marijuana and saw air fresheners clipped to the vents and an aerosol can of air freshener between the driver's seat and the center console. The officer testified defendant was "very short and dismissive" in responding to questions.

After reviewing defendant's driving credentials, the officer returned to his patrol car to ask dispatch to run a warrant check on defendant. While awaiting those results, the officer asked defendant to step out of the car to further investigate the marijuana smell. The officer noted defendant's increased nervousness, and when he "kept putting his hands in his pockets," the officer patted defendant down, as he testified, for his own safety.

After learning from dispatch that defendant had no outstanding warrants but several prior drug convictions, the officer asked defendant for consent to search his car. Defendant refused, and the officer asked dispatch to send a canine unit. After the dog and his handler arrived ten or fifteen minutes later, the dog "hit" on two locations on the outside of the car. The officer issued defendant two summonses, impounded the car and applied for a search warrant detailing the facts we've noted here. Defendant got a ride home with a friend. Following issuance of the warrant, police discovered a loaded Glock in the

A-4697-17T2

center console, the high capacity magazine, and a black ski mask. Police did not find marijuana or any other drugs in the car.

Defendant's counsel cross-examined the arresting officer extensively about his experience in the police academy and on the job in smelling raw marijuana. Although the officer testified he could not recall how many of his fifty prior drug arrests had involved raw marijuana, he was confident it was marijuana he smelled even though none was discovered in the car during the warrant search.

The State also presented the testimony of the dog handler, Sheriff's Officer Robert Mantone. The officer explained he had worked as part of the canine unit for two years prior to the search of defendant's car. Both Officer Mantone and his dog, Mike, attended the Union County Sheriff's Department canine training program, receiving certifications for patrol and narcotics in 2012. Those certifications, as well as two positive evaluations from in-service trainings, both just weeks before this stop, were admitted in evidence.

On cross-examination, defense counsel established that Officer Mantone believed it was not possible to induce a "false alert" in a drug detection dog and thought Mike was "perfect" in his ability to detect the odor of marijuana or narcotics, asserting the dog had never alerted in an actual search when

4

narcotics were not found. When told the State stipulated no marijuana was found in defendant's car, notwithstanding Mike's alert, Officer Mantone testified that if his "dog alerts, there is the presence of the odor of narcotics if there's physically drugs there or not when the dog indicates there's an odor of narcotics." Defense counsel also established that Officer Mantone did not have any deployment records for Mike detailing the number of field sniffs he had performed, including any comparison of the dog's positive indications to "finds." Accordingly, the State could offer no proof as to how effective Mike was at detecting the presence of drugs on patrol.

Defendant presented the testimony of Andre Brian Jimenez, an expert in the training, supervision, deployment and handling of narcotics detection dogs. Jimenez testified Mike's training records did not provide enough information to permit him to provide an opinion as to the adequacy of the dog's training. He testified no drug detection dog was "perfect," and the best were only accurate seventy to eighty percent of the time in laboratory conditions. He also testified that handlers can easily and inadvertently induce a false alert, and thus must be trained to be conscious of and combat any tendency to subconsciously influence their dogs to alert.

A-4697-17T2

Jimenez was critical of Mantone for not recognizing the potential to induce a false alert in his dog and in his belief that his dog was one hundred percent accurate, especially given his failure to maintain accurate deployment records. He testified Mantone was obviously not adequately trained, and the records for Mike did not comply with the Attorney General's K-9 Guidelines. Jimenez was also critical of the police's failure to have a dog re-sniff the car when the search warrant did not turn up any drugs. He claimed that step should always be taken as a matter of course when drugs are not discovered after an alert. Doing so might reveal a hidden compartment in the car and would also assist the handler in ascertaining why the dog alerted when no drugs were found. In response to a question from the court, Jimenez acknowledged it was, "of course," possible for an officer to detect the smell of raw marijuana.

On cross-examination, the assistant prosecutor established Jimenez had no proof that Mantone had intentionally manipulated Mike to alert in this case. Although agreeing with the assistant prosecutor that dogs are not trained to find drugs, but only to detect the odor of drugs, and that the odor of drugs can persist after drugs are removed, and thus that the failure to find drugs "doesn't mean that the dog didn't properly hit," Jimenez continued to insist the failure

6

to find drugs here was fatal because there was no corroboration for Mike's alert. He rejected the arresting officer's report of smelling raw marijuana as irrelevant, deeming it insufficient to constitute corroboration for the "hit."

Jimenez admitted there was no requirement that deployment records be maintained, although he argued it had been standard practice for over thirty years. Jimenez conceded the only discrepancy between Mike's records and the A.G. Guidelines was the failure of certain supervisory signatures and identifying information in the dog's daily training reports. Jimenez acknowledged the dog's required certifications were properly signed and otherwise in order.

In a comprehensive twenty-eight page written opinion, Judge Foti summarized the testimony of the arresting officer, the dog handler and defendant's expert, addressed the case law relied on by the defense, and methodically stepped through each event from the officer's reasonable suspicion for the stop, his pat down of defendant, and his ordering of the canine sniff, to the probable cause for issuance of the search warrant for defendant's car. The judge next proceeded to analyze whether the State had sufficiently established the dog's reliability under Florida v. Harris, 568 U.S. 237, 246-47 (2013), to support probable cause for the issuance of the warrant

A-4697-17T2

under State v. Sullivan, 169 N.J. 204, 210-12 (2001).  Applying the law to the facts she found, based on the testimony she deemed credible, Judge Foti concluded the officers' actions did not transgress the Fourth Amendment and accordingly denied defendant's motion to suppress the evidence obtained pursuant to the search warrant.

Specifically, Judge Foti found defendant's broken headlight and tinted windows, both of which he conceded, provided the arresting officer reasonable, articulable suspicion for the stop.  See State v. Scriven, 226 N.J. 20, 33-35 (2016).  The judge found the officer a good, credible witness, who answered questions on direct and cross-examination forthrightly and without hesitation.  Accepting the officer's testimony that he had both the training and experience to identify the odor of raw marijuana, which emanated from defendant's car when he rolled down the window to speak to the officer, coupled with the multiple air fresheners he saw, defendant's nervousness and his curt and dismissive manner, Judge Foti found the totality of circumstances supported both defendant's continued detention to investigate the marijuana smell, see State v. Dunbar, 229 N.J. 521, 540 (2017), and defendant's pat down, see State v. Privott, 203 N.J. 16, 26 (2010).

Finally, Judge Foti found based on the arresting officer's testimony and his affidavit supporting the search warrant that there was probable cause for issuance of the warrant. See Sullivan, 169 N.J. at 210-12. Specifically, the judge noted the officer cited four "key reasons" for the search of defendant's car: 1) the odor of marijuana, 2) defendant's demeanor, 3) the air fresheners and aerosol can, and 4) Mike's positive alert to drugs. The judge found the first three were well within the arresting officer's ken and because the State satisfied the Harris factors, namely that canine Mike was certified by a bona fide organization and had "recently and successfully completed a training program that evaluated his proficiency in locating drugs," Harris, 568 U.S. at 247, the officer's testimony and the dog sniff established probable cause for issuance of the search warrant.

The judge addressed and rejected defendant's contention that the arresting officer falsely testified to the odor of raw marijuana in order to escalate the car stop. The judge reiterated she believed the officer's testimony that he knew the smell of raw marijuana, which even defendant's expert testified was distinct, and recognized it wafting from defendant's window. Judge Foti accepted the defense expert's testimony that no dog could accurately detect the odor of drugs one hundred percent of the time and found

Officer Mantone's testimony that Mike was "perfect" incredible. She also agreed with the expert that police should have arranged a second sniff when they were executing the warrant. Nevertheless, she found those flaws and "any record keeping deficiencies" as to canine Mike "not fatal" to the State's case because neither impugned the dog's certifications and recent successful reevaluations.

The judge found no evidence in the record to support the defense expert's assertion that Officer Mantone either deliberately or unintentionally cued the dog to falsely alert. Although finding defendant's expert clearly knowledgeable about the training and deployment of drug detection dogs, the judge found the expert abandoned his role on critical points. Specifically, Judge Foti found the expert's unwillingness to acknowledge that the arresting officer having smelled raw marijuana was corroborative of the dog's alert and the expert's insistence that the failure to have found marijuana here was conclusive proof the dog falsely alerted, despite testifying that a well-trained drug dog could detect the odor even after the drugs were moved, amounted to no more than advocacy on behalf of defendant. She accordingly rejected those aspects of the expert's testimony as incredible.

10

Finally, the judge rejected defendant's contention "that the entire case was pretextual or mistaken because the police failed to find any narcotics." The judge noted that "[p]robable cause exists if at the time of the police action there is 'a "well grounded" suspicion that a crime has been or is being committed.'" Sullivan, 169 N.J. at 211 (emphasis added) (quoting State v. Waltz, 61 N.J. 83, 87 (1972)). That marijuana was not ultimately discovered in defendant's car despite the officer smelling it and the dog alerting to it, does not invalidate the officer's probable cause to suspect it was there. The judge found "[t]here is simply no evidence in the record to support a finding that the police fabricated the evidence which forms the basis for the search warrant in this case."

Defendant appeals, raising one issue:

> THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A CONSTITUTIONALLY INFIRM SEARCH.

Specifically, defendant contends that "[a]t no time did the police officer detect an odor of marijuana nor were answers to questions uttered by [him] short and dismissive." Defendant maintains the court denied his suppression motion "despite the clear evidence that the alleged odor of marijuana was fabricated to underpin a K-9 sniff; the required training records were not maintained, and

neither the K-9 nor its handler were properly trained, and no form of CDS was found in the vehicle during the illegal search."

We reject his arguments as without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Defendant does no more than challenge the trial judge's credibility findings, which we are in no position to second-guess. See State v. Elders, 192 N.J. 224, 243 (2007). We are obligated to "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). Deference "is required because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Id. at 424-25 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Because Judge Foti's findings are amply supported by the record, and her finding that the arresting officer credibly testified he smelled raw marijuana in defendant's car would itself support a finding of probable cause sufficient to support the search warrant without the dog sniff, see State v. Nishina, 175 N.J. 502, 515-16 (2003), we affirm the denial of defendant's suppression motion, and his conviction, essentially for the reasons she expressed in her opinion of

12

July 11, 2016.  We remand for the limited purpose of correction of the sentences in conformance with the code, based on the record at the prior sentencing.

Affirmed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4697-17T2