**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2154-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUAN R. MARTORI,

    Defendant-Appellant.

_____

> Submitted December 19, 2019 – Decided March 11, 2020
>
> Before Judges Suter and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment Nos. 15-09-1171 and 17-01-0135.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Juan R. Martori appeals his November 17, 2017 judgment of conviction, challenging only the order from November 3, 2016, that denied his motion to suppress a search warrant. We affirm the order and the judgment.

I.

In 2015, defendant was charged under Bergen County indictment 15-09-1171 with two counts of third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); and first-degree maintaining or operating a drug manufacturing facility, N.J.S.A. 2C:35-4.

In 2017, defendant was charged under Bergen County indictment 17-01-0135 with third-degree possession of a controlled dangerous substance (CDS), fentanyl, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(13); third degree possession of CDS, fentanyl, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS, heroin, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); and four counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2).

In 2017, defendant pleaded guilty to both indictments. On indictment 15-09-1171, he pleaded guilty to first-degree maintaining and operating a CDS production facility, N.J.S.A. 2C:35-4. On indictment 17-01-0135 he pleaded

guilty to third-degree possession of fentanyl with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(13).

The judge sentenced defendant to a ten-year term in prison with a forty-two-month period of parole ineligibility on indictment 15-09-1171 and to a five-year term with a thirty-month period of parole ineligibility on indictment 17-01-0135. The sentences were to be served concurrently.[1]

In 2016—after the first indictment was returned, but before the second—defendant sought to suppress a warrant, issued on May 27, 2015, that authorized the police to search for CDS and drug distribution paraphernalia in defendant's apartment. The search warrant was supported by the affidavit of Detective Michael Klumpp. Based on his affidavit and testimony, the trial court denied the suppression motion.

The trial court found that the Bergen County Narcotics Task Force was advised by a confidential informant (CI) that "Raymond," later identified as defendant, was known to distribute CDS (heroin) in Cliffside Park. The CI provided defendant's address and phone number, indicating he could purchase CDS from defendant. At Klumpp's instruction, during the week of May 11,

---

[1] The judge imposed statutory fines and penalties; his driver's license was suspended for twenty-four months.

A-2154-17T3

2015, the CI contacted defendant to arrange to purchase heroin. The CI was searched prior to the transaction and provided with currency. Defendant and the CI met at a prearranged location and surveillance was established at defendant's address and the location of the drug buy. "[S]urveillance personnel observed [defendant] exit the residence . . . and proceed directly to the prearranged location where the CI" and Klumpp were located. Defendant sold CDS to the CI in Klumpp's presence; tests revealed the substance was heroin. Klumpp identified defendant from his driver's license.

Klumpp's affidavit described two individuals in Cliffside Park who had been revived by the use of Narcan after an overdose. The CI indicated these individuals purchased heroin from defendant. The affidavit included defendant's criminal history and that based on information from the Post Office, defendant accepted mail at the specific apartment address. Defendant also was observed by the police driving his daughter's vehicle, registered at the apartment. Detectives also confirmed defendant's residence through the Motor Vehicle Commission. Klumpp's supporting affidavit included his employment, education, training and experience as a police officer. He stated in the affidavit that "narcotic traffickers are known to keep narcotic records, money, paraphernalia, and other instrumentalities used in furtherance of narcotics

4

distributions, as well as, actual controlled dangerous substances at residences in which they have control."

The trial court conducted a hearing on the suppression motion limited to what appeared to be an error about the specific address. Klumpp testified that surveillance was established at defendant's residence at the specific address. The other address mentioned in the search warrant was a typographical error. Klumpp further testified he had been inside of the specific building previously and believed defendant's apartment was on the second floor.

On November 3, 2016, the trial court denied defendant's motion to suppress the search warrant for the specific apartment. The trial court found the CI "provided detectives with significant details about the defendant such as his alias, phone number and address." The CI also contacted defendant to make a controlled buy of heroin and that purchase was made in Klumpp's presence. The court found the detectives did not fail to "corroborate the information supplied to them by the CI[,] which resulted in the investigation and subsequent arrest of the defendant."

With respect to defendant's argument there was no probable cause to search the specific apartment, the trial court found Klumpp to be credible in his testimony that defendant was seen leaving the apartment building prior to the

5

controlled buy, even though there was a typographical error in the search warrant affidavit. This error did not require suppression of the search warrant.

On appeal, defendant raises one issue:

POINT I

BECAUSE A STREET SALE DID NOT CREATE PROBABLE CAUSE TO SEARCH AN APARTMENT IN A MULTI-UNIT BUILDING, THE WARRANT APPLICATION WAS DEFICIENT, AND THE FRUIT SHOULD BE SUPPRESSED. U.S. CONST., AMENDS. IV, XIV, N.J. CONST., ART. I, PAR.7.

II.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44 (2011). We review a motion judge's factual findings in a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). We defer "to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to the trial court's legal conclusions or interpretation of the

6

legal consequences that flow from established facts. Our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Defendant argues the street sale of narcotics, although providing probable cause to arrest defendant, did not give rise to probable cause to search defendant's apartment. Defendant contends no one saw him store or sell narcotics there. He therefore argues there was no probable cause that a search of that apartment would yield contraband.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution "protect [the State's] citizens against unreasonable police searches and seizures by requiring warrants issued upon probable cause 'unless [the search] falls within one of the few well-delineated exceptions to warrant requirement.'" State v. Maryland, 167 N.J. 471, 482 (2001) (second alteration in original) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). "A search that is executed pursuant to a warrant is 'presumptively valid,' and a defendant challenging the issuance of that warrant has the burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" State v. Boone, 232 N.J. 417, 427 (2017) (quoting Watts, 223 N.J. at 513-14).

A-2154-17T3

Probable cause is "consistently characterized . . . as a common-sense, practical standard for determining the validity of a search warrant." State v. Novembrino, 105 N.J. 95, 120 (1987). It is met when police have "a 'well grounded' suspicion that a crime has been or is being committed." State v. Waltz, 61 N.J. 83, 87 (1972) (quoting State v. Burnett, 42 N.J. 377, 387 (1964)). The United States Supreme Court similarly described probable cause as a "practical, nontechnical conception." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Probable cause requires more than mere suspicion; it requires a showing of a "fair probability" that criminal activity is taking place. State v. Demeter, 124 N.J. 374, 381 (1991) (quoting Gates, 462 U.S. at 238). Courts must base a probable cause determination on the totality of the circumstances and consider the probabilities. State v. Jones, 179 N.J. 377, 389 (2004) (citing Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

We disagree with defendant's arguments because there was ample evidence to support probable cause for the search of this apartment. A CI provided information that defendant was selling heroin in Cliffside Park. The CI provided defendant's name, address and cell phone number. A controlled buy was arranged between the CI and defendant; they exchanged text messages. The

detective was with the CI when defendant sold heroin to the CI. Defendant was kept under surveillance. He left his apartment building and went directly to meet the CI. The drugs were field tested and determined to be heroin. The Post Office provided information that defendant accepted mail at this apartment. Defendant had a criminal history involving narcotics. He was seen driving his daughter's vehicle, who had the same apartment address. The detective also attested, based on his experience, that narcotics traffickers keep records, money, paraphernalia and other instrumentalities for drug distribution at the residence where they have control.

Defendant relies on State v. Boone, 232 N.J. 417 (2017) to support his arguments. In Boone, the defendant contended there was not enough information to support a warrant to search an apartment. Id. at 421. The Court agreed stating that judges must review the warrant application to tie specific evidence to the property to be searched. Id. at 431.

Boone is factually distinguishable because in that case there was no information in the search warrant application about how the police knew the defendant lived in one specific apartment in the building, nor did the search warrant application indicate the building was a thirty-unit apartment building. Id. at 422. In the present case, defendant accepted mail at this specific apartment

address; his daughter and wife lived there. Surveillance showed him leaving directly from that building to go to the controlled buy with the CI.

Defendant argues the search warrant was supported solely by the detective's assertion that drug traffickers are known to keep CDS at their residences. Defendant argues this type of support has been rejected in other cases. However, this search warrant was not based just on the fact that drug traffickers keep drugs in their residences or places they control. It was based on information from a CI, a controlled buy and defendant's surveilled conduct where he went directly from the building where he resided to the prearranged location. Looking at this search warrant affidavit and the totality of the circumstances, we agree with the trial judge there was probable cause for the search warrant and that defendant's motion to suppress what was seized in the search was properly denied.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2154-17T3