**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1282-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMES M. PENA, a/k/a
JAMES PENA,

    Defendant-Appellant.

_____

Submitted May 14, 2024 – Decided July 3, 2024

Before Judges Puglisi and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 21-02-0229.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant James M. Pena appeals from the Law Division's June 8, 2021 order denying his motion to suppress evidence seized pursuant to a search warrant and request for a Franks[1] hearing in connection with that motion. We affirm substantially for the reasons set forth by Judge Mitzy Galis-Menendez in her thorough written decision denying both applications.

On August 8, 2020, T.L. and J.C.-V.[2] appeared at the Secaucus Police Station to report they had just been robbed. T.L., who had a visible lump on his head, was barefoot and disheveled. T.L. did not wish to participate any further in the investigation, but J.C.-V. was willing to provide a statement.

J.C.-V. stated a woman with whom he had been conversing on the phone invited him to a residence to "hang out" and smoke marijuana. When he and T.L. entered the backyard of the house around 9:30 p.m., she and two other women greeted them and engaged in conversation. Shortly thereafter, two men entered the backyard and one shouted, "[W]ho the f*** are these n****s in my house," and then both men pulled handguns out of their waistbands.

---

[1]  Franks v. Delaware, 438 U.S. 154 (1978).

[2]  We use the victims' initials to protect their privacy.

A-1282-22

J.C.-V. said the first perpetrator, later identified as defendant, was wearing half a mask and had braids, because he saw one of the braids went over the mask and onto his face. Defendant held his gun to J.C.-V.'s neck and took his sneakers and jewelry worth about $8,500, including a gold necklace with a jaguar pendant and a two-fingered ring with his nickname "Shwing." At some point during the incident defendant asked who had been "talking to [his] girl on the phone."

J.C.-V. described the second perpetrator, later identified as co-defendant James Baker, as a "white male, approximately [twenty] to [twenty-five] years old, wearing a full mask and dark pants." At one point Baker "lifted his mask" and J.C.-V. saw "he had light eyebrows and a round face." Baker pointed his gun at T.L. and said, "Give me your bud," referring to the marijuana T.L. had brought. Baker hit T.L. on the head with the gun and took his marijuana, wallet and Air Jordan sneakers.

Detective Fuardo was familiar with the address J.C.-V. provided, and knew defendant occupied the second floor and his grandmother occupied the first floor. He was also familiar with defendant, whom Fuardo knew to wear his hair in braids. Fuardo was aware defendant had an extensive history of contacts with the Secaucus Police Department, with nine prior arrests including CDS and handgun offenses.

Based on J.C.-V.'s statement, two police officers began surveilling defendant's residence at approximately 11:00 p.m. that same day. About an hour and fifteen minutes later, Baker walked out the front door of the house. Because Baker matched the description of the second perpetrator, the officers stopped and detained him for questioning. Based on J.C.-V.'s report that both perpetrators had handguns in their waistbands, the officers handcuffed Baker on the ground whereupon he spontaneously asked them to remove the pellet gun from his waistband. When the officers turned Baker over, they observed he was wearing a gold necklace with a jaguar pendant and arrested him. A search of Baker incident to his arrest uncovered a pocketknife, marijuana, Xanax, and a hatchet.

Fuardo then prepared and submitted an application for a warrant to search defendant's residence for "certain property, specifically proceeds, firearms, ammunition, clothing, masks, cellphones, and other evidence of the commission of a crime, specifically robbery." The accompanying affidavit described the residence, which is a two-family home, as "a standalone house with two stories," and noted defendant resided on the top floor while his grandmother lived on the first floor. It sought the warrant to search for "proceeds of the robbery (including jewelry, sneakers and marijuana), weapons used in the robbery

(including handguns, BB guns, or imitation firearms), face masks, clothing, cell phones, and other items of evidentiary value."

A judge approved the issuance of the search warrant on August 9, 2020, and police executed it the same day.[3]  The search uncovered gold rings, including one with J.C.-V.'s nickname, additional gold jewelry, T.L.'s Air Jordan sneakers, baggies of marijuana, and an imitation handgun.

Defendant was charged with two counts of first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and :15-1(a)(1); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(e); and possession of CDS, N.J.S.A. 2C:35-10(a)(4).  A grand jury later returned an indictment on these offenses.

Judge Galis-Menendez denied Baker's subsequent motion to suppress the evidence seized during his investigatory stop and resulting arrest, finding there were reasonable, articulable facts that led officers to believe Baker had engaged in criminal activity.  The court further found the officers then had probable cause to arrest Baker and search him incident to that arrest.

---

[3]  Although the search warrant describes the entirety of the two-story residence, there is no indication in the record that detectives searched the first floor, where defendant's grandmother resided.

A-1282-22

Defendant filed a motion to suppress the evidence seized pursuant to the search warrant, arguing Fuardo's affidavit failed to establish probable cause to search the interior of the residence because it was based on an incident that occurred in the backyard, and the affidavit lacked particularity as to the place to be searched and the items to be seized. He also sought a Franks hearing, contending the affidavit deliberately misrepresented J.C.-V.'s description of defendant's hair.

Judge Galis-Menendez carefully considered and rejected these contentions in her comprehensive opinion. Defendant then pleaded guilty to an amended charge of third-degree theft from the person, N.J.S.A. 2C:20-2(b)(2)(d), and was sentenced to a five-year term of Recovery Court probation.

On appeal, defendant reprises the arguments he raised below:

> POINT I
>
> THE SUPPRESSION MOTION SHOULD HAVE BEEN GRANTED BECAUSE THE WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH [DEFENDANT'S RESIDENCE].
>
> A. The Affidavit Lacked Information Linking The Home To The Crime And Information Regarding The Detective's Basis For Believing That [defendant] Lived In The Home Or That [defendant] Had Braids.

6

B. The Affidavit And Warrant Lacked Particularity As To The Place To Be Searched And The Items To Be Seized.

C. The Affidavit Largely Relied On The Illegal Arrest Of Baker As A Basis For Probable Cause.

POINT II

IN THE ALTERNATIVE, THE MATTER SHOULD BE REMANDED FOR A FRANKS HEARING BECAUSE [DEFENDANT] MADE A SUBSTANTIAL PRELIMINARY SHOWING THAT THE WARRANT AFFIDAVIT CONTAINED FALSEHOODS AND OMITTED MATERIAL FACTS.

In addressing Point I, we note that "a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "Accordingly, courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" State v. Keyes, 184 N.J. 541, 554 (2005) (alteration in original) (quoting Jones, 179 N.J. at 388).

When "reviewing a grant or denial of a motion to suppress [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v.

7

Gamble, 218 N.J. 412, 424 (2014). We "should reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 425 (quoting State v. Elders, 192 N.J. 224, 244 (2007) (internal quotation marks and citation omitted)).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. Thus, "a trial court's legal conclusions are reviewed de novo." Ibid.

The New Jersey Constitution provides that "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." N.J. Const. art. I, ¶ 7. "When a court receives an application from the police for a search warrant, it should not issue that warrant 'unless the court is satisfied that there is probable cause to believe that . . . evidence of a crime is at the place sought to be searched.'" State v. Smith, 212 N.J. 365, 388 (2012) (quoting State v. Marshall, 199 N.J. 602, 610 (2009) (internal quotation marks and citation omitted)).

Probable cause requires "less than legal evidence necessary to convict though more than mere naked suspicion." Ibid. (quoting State v. Mark, 46 N.J. 262, 271 (1966)). It exists when a police officer possesses "a 'well grounded'

suspicion that a crime has been or is being committed." State v. Sullivan, 169 N.J. 204, 211 (2001) (quoting State v. Waltz, 61 N.J. 83, 87 (1972)). "[T]he court must make a practical, common sense determination whether, given all of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. O'Neal, 190 N.J. 601, 612 (2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Further, probable cause must be determined "based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Marshall, 199 N.J. at 611 (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).

After reviewing the record, we agree with the judge's determination that Fuardo's affidavit established probable cause for the issuance of the warrant. Two victims, one with a visible injury, reported having just been robbed at gunpoint. J.C.-V. provided an account of the incident, the address where it took place and a description of the perpetrators. During the incident, one of the perpetrators asked who was at his house, which indicated he lived at that residence. Police were familiar with the address and knew it to be that of defendant, who had prior weapons and CDS offenses. Fuardo also knew defendant's appearance was consistent with J.C.-V.'s description of him,

although at the time of his arrest defendant did not wear his long hair in dreadlocks or braids. Hours after the incident, Baker exited defendant's house wearing J.C.-V.'s distinctive necklace and concealing a pellet gun in his waistband.

Contrary to defendant's contentions, the affidavit included ample evidence supporting "a practical, common sense determination [that], given all of the circumstances, there [was] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place" for which the search warrant was issued. Marshall, 199 N.J. at 610 (quoting O'Neal, 190 N.J. at 612).

We also reject defendant's argument that the stop of Baker was unconstitutional. To perform a valid investigatory stop, "the evidence, when interpreted in an objectively reasonable manner, [must] show[] that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." State v. Davis, 104 N.J. 490, 505 (1986); see also Terry v. Ohio, 392 U.S. 1 (1968). The court must consider the totality of the circumstances when determining whether reasonable suspicion exists. Davis, 104 N.J. at 504.

Further, to perform a limited frisk search of a suspect during an investigatory stop, law enforcement must have "reason to believe that [they are]

dealing with an armed and dangerous individual." State v. Privott, 203 N.J. 16, 25 (2010) (quoting Terry, 392 U.S. at 27). The purpose of allowing law enforcement to frisk individuals is "not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." Ibid. (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)). Again, the court considers the totality of the circumstances. Id. at 28.

For the reasons articulated by the judge, we discern no basis to disturb her decision the officers had reasonable, articulable suspicion Baker had engaged in criminal activity. The totality of the circumstances indicated Baker was potentially armed and dangerous, and the resulting arrest and search were supported by probable cause.

Turning to Point II, the judge also correctly denied defendant's request for a Franks hearing. It is well-established that an affidavit for a search warrant is presumed to be valid. Franks, 438 U.S. at 171. A defendant who challenges the validity of a search warrant affidavit is entitled to a Franks hearing only if the "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." Id. at 155-56.

Stated differently, a <u>Franks</u> "hearing is required only if the defendant can make a substantial preliminary showing of perjury." <u>State v. Howery</u>, 80 N.J. 563, 583 n.4 (1979).

In making this showing, the defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." <u>Id.</u> at 567 (quoting <u>Franks</u>, 438 U.S. at 171). The defendant also must show that the misstatements claimed to be false are material "to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause." <u>Id.</u> at 568.

"The limitations imposed by <u>Franks</u> are not insignificant." <u>Id.</u> at 567. The burden placed on the defendant is onerous because "a <u>Franks</u> hearing is not directed at picking apart minor technical problems with a warrant application[,]" but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents[.]" <u>State v. Broom-Smith</u>, 406 N.J. Super. 228, 240 (App. Div. 2009).

Applying these principles, we discern no reason to disturb Judge Galis-Menendez's denial of defendant's request for a <u>Franks</u> hearing. Defendant argues Fuardo misrepresented his appearance by stating defendant

had "braids," when J.C.-V. reported the perpetrator had a single dreadlock. He further argues both statements are incorrect because, although he had long hair, he wore neither braids nor dreadlocks when he was arrested.

Given these facts, we are unpersuaded that any misstatement in the affidavit was a deliberate falsehood or reckless disregard of the truth. We also agree with the judge's finding that Fuardo's affidavit did not rely solely on the description of the perpetrator's hair to support the request for the search warrant. And even if the portions of the affidavit concerning defendant's hairstyle were excised from the application, the other facts learned from J.C.-V. and the items discovered incident to Baker's arrest provided ample probable cause justifying the issuance of the warrant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

13